Erik F. Stidham (Admitted pro hac vice)
Robert A. Faucher (Admitted pro hac vice)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: (208) 342-5000
efstidham@hollandhart.com
rfaucher@hollandhart.com

Darren G. Reid (11163)
Engels Tejeda (11427)
Benjamin D. Passey (19234)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
dgreid@hollandhart.com
ejtejeda@hollandhart.com
bdpassey@hollandhart.com

*Attorneys for St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| In re: | Bankruptcy No. 24-23530 |
|---|---|
| AMMON EDWARD BUNDY | Chapter 7 |
| Debtor. | Honorable William T. Thurman |

**ST. LUKE'S CREDITOR'S MOTION FOR RELIEF FROM BANKRUPTCY STAY**

Pursuant to Section 362(d)(1) of the Bankruptcy Code, St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP (together "St. Luke's Creditors"), by and through their counsel, respectfully move this Court for an order terminating the automatic stay so that the St. Luke's Creditors may seek enforcement of a permanent injunction that prohibits Debtor Ammon Bundy ("**Debtor Bundy**") from engaging

1

in ongoing defamation of the St. Luke's Creditors, and requires him to remove defamatory statements from internet sites and accounts he controls. The St. Luke's Creditors further request a waiver of the stay imposed by Fed. R. Bankr. Procedure 4001(a)(3) on any order granting the Motion because of the ongoing harm caused by the Debtor and his continuous violation of the pre-petition injunction, and his recent escalation of publishing defamatory allegations against the St. Luke's Creditors.

This Motion is supported by the following Memorandum and the Exhibits attached hereto.

## **MEMORANDUM**

**I.    BACKGROUND**

1.    In August 2023, an Idaho state court entered a permanent injunction ("Permanent Injunction") and $53 million default judgment ("Judgment') against Debtor Bundy and other defendants to that case (*St. Luke's et al v. Bundy et al.*, in the District Court of the Fourth Judicial District of the State of Idaho, County of Ada, Case No. CV01-22-06789) (the "Idaho Case"). A true and accurate copy of the Permanent Injunction is included herewith as **Exhibit A**. The Permanent Injunction directs Debtor Bundy to cease posing and disseminating defamatory statements against St. Luke's Creditors. Ex. A at 37. It likewise directs Debtor Bundy to stop making statements that any of the St. Luke's Creditors are criminals, including that they participate in unlawful kidnapping of children. *Id.* The Permanent Injunction also directed Debtor Bundy to remove existing defamatory statements from internet sites and accounts he controls. *Id.*

2.    For more than a year, Debtor Bundy has violated the Permanent Injunction. And recently, Debtor Bundy has increasingly targeted the St. Luke's Creditors with dangerous false statements in violation of the Permanent Injunction. For example, just about a week ago, Debtor

Bundy escalated his prior defamatory rhetoric in violation of the Permanent Injunction by: (1) making false statements about the facts underlying the judgment; and then (2) targeting the St. Creditors for his followers.

In two live-stream videos posted by Debtor Bundy to his YouTube channel, Debtor Bundy told his followers that:[1]

    a.    "The key people in this that are pushing this are the CEO of St. Luke's, Chris Roth, and of course, he's trying to protect St. Luke's because they're a children's hospital, they're a big hospital chain, they run on a $600 million annual budget. And he's trying to protect his corporation from becoming reputable for taking babies. But that's exactly what happened." Dec. 5 Video at 4:14.

    b.    "I don't want you to send money, what I want you to do is stand up for what is right... I don't want you to think that you've done your job as a citizen of this country by sending me money after some place like St. Luke's Health System has done what they did to me... What I want is for justice to be served. And I'll tell you what, the head attorney on this is a wicked, wicked person. His name is Erik Stidham and he works for Holland & Hart. And he is a wicked, wicked individual... It's authorized by the St. Luke's Board of

---

[1] "Crazy Court Hearing", Dec. 5, 2024, https://www.youtube.com/live/qsF5QEYnulo?si=N2zvX9doAIwAzRbf (last visited Dec. 9, 2024) ("Dec. 5 Video"); "Deny, Defend, Depose – CEO & Lawyers," Dec. 7, 2024, available at https://www.youtube.com/live/2oNBT1nowDk?si=Fgi2tVkICUpGnDj1 (last visited Dec 9, 2024) ("Dec. 7 Video"). The rough transcripts of these videos are attached hereto as **Exhibit B**.

    Directors, and primarily who sits on the Board of Directors, Chris Roth." "And I tell you what, I don't condone it but I completely understand now why that murder happened to what was his name - Brian Thompson - of the United insurance group... Someone came up and shot him in the back multiple times. And I don't agree with that, but I completely understand it. Cause I suppress those feelings every day. I do in the sense that I'm a Christian person and so I am not supposed to think that way." Dec. 5 Video at 18:40.

 c. Bundy said Brian Thompson was probably shot because an individual was wronged by that corporation and CEO: "Because they think they're gods. Just like Chris Roth. He's pushed this and pushed this and he's got this buddy Erik Stidham, and he gave him a blank check." Dec. 5 Video at 21:30

 d. "I think we're going to see this happen more and more I think we're going to see people become more and more disgruntled more and more um feeling like they got to take justice into to their own hands[.]" Dec. 7 Video at 17:16.

3. Debtor Bundy's recent decision to violate the Permanent Injunction, a court order, is not new behavior. It follows a long history of Debtor Bundy's refusal to follow orders of courts, including orders of the Idaho court that he not engage in harassing or defaming behavior of the St. Luke's Creditors. For example:

 a. A contempt trial was scheduled to begin on November 13, 2023, in the Idaho court that issued the Judgment and Permanent Injunction. That trial was to adjudicate Bundy's violations of a protective order and preliminary

4

        injunction that governed the during the course of the Idaho proceedings. Specifically, the contempt charges related to Debtor Bundy's defamation and harassment of the St. Luke's Creditors (the plaintiffs in the Idaho case) and also his harassment and doxing of the witnesses, judges, and lawyers involved in that lawsuit. Attached hereto as **Exhibit C** is a true and correct copy of St. Luke's Creditors' Contempt Trial Brief filed on November 3, 2023. Debtor Bundy did not appear on first day of the contempt trial, and the Idaho court issued a warrant for his arrest—which is outstanding.

    b.    On October 20, 2023, St. Luke's Creditors also filed a Motion for Contempt against Ammon Bundy and his entities People's Rights Network and Ammon Bundy for Governor in the Idaho Case for violations of the Permanent Injunction. A true and correct copy of Motion for Contempt against Bundy is attached as **Exhibit D**.

    c.    Attached hereto as **Exhibit E** is a true and correct index of Debtor Bundy's violations of the Idaho court's August 25, 2023 Permanent Injunction.

4.    Debtor Bundy moved to Utah on or around November 14, 2023.

5.    In April 2024, St. Luke's Creditors commenced an action in the Fifth Judicial District Court, in Washington County, Utah, to enable them to enforce the Judgment and Permanent Injunction in Utah, where Bundy now lives (the "Utah Case"). Attached hereto as **Exhibit F** is a true and correct copy of the docket of the Utah Case.

6.    In the Utah Case, St. Luke's Creditors asked the Utah court to immediately freeze all assets in bank accounts in the name of Debtor, as well as entities he established and controlled,

until the conclusion of a separate Idaho court action to pierce the corporate veil was adjudicated. Debtor Bundy had abused the corporate cloak to frustrate St. Luke's Creditors' collection efforts. Attached hereto as **Exhibit G** is a true and correct copy of the moving motion for preliminary relief filed in the Utah Case.

7. On April 22, 2024, the Utah Court granted St. Luke's Creditors' motion for preliminary relief, finding that absent an injunction, St. Luke's Creditors faced continued irreparable harm to their ability to collect the $52 million Judgment. Attached hereto as **Exhibit H** is a true and correct copy of the Utah court's order granting preliminary relief.

8. St. Luke's Creditors also requested that the court hold judgment debtors, including Debtor Bundy, in contempt of court and require them to appear personally at the Utah Court and explain why they violated the Judgment. The Utah Court ordered judgment debtors to appear personally at the Fifth District Court in Utah's Washington County to explain whether they violated the Judgment. Debtor Bundy did not appear at the May 20, 2024 hearing. Attached hereto as **Exhibit I** are true and correct copies of the moving papers for the sanctions, including contempt, and the Utah court's order to appear.

9. Concurrently with the above, St. Luke's Creditors filed a motion for a supplemental proceeding for an examination to identify Debtor Bundy's property, which the Court granted. Attached hereto as **Exhibit J** are true and correct copies of the moving papers for a supplemental proceeding, and the Utah court's order granting the same.

10. The examination of Debtor Bundy was set in St. George, Utah, near Debtor Bundy's now suspected residence, on June 20, 2024. *Id.* (Order Granting Motion for Supplemental Proceeding). Part and parcel to the order, Debtor Bundy had the option of filling out answers and

6

questions about his property, which if answered fully and truthfully, would eliminate his need to attend the Debtor's examination.[2] *Id.* The Court held that if Debtor Bundy failed to comply with its order, it had the option to impose sanctions against Debtor Bundy. *Id.*

11. Debtor Bundy did not supply written information to St. Luke's Creditors about his assets. He also failed to attend his examination on June 20. St. Luke's Creditors were compelled to ask the Utah Court to enforce its order and for sanctions. Attached hereto as **Exhibit K** is a true and correct copy of the supplemental evidence submitted by St. Luke's creditors in support of their motion to enforce the order and for sanctions. The evidence was of statements made by Debtor Bundy and his acolytes demonstrating Debtor Bundy had no plans to comply with the Judgment. *Id.* The Utah Court set an evidentiary hearing on St. Luke's Creditors' motion to enforce and for sanctions for September 5, 2024. Attached hereto as **Exhibit L** is a true and correct copy of the notice setting the evidentiary hearing.

12. On July 17, 2024, Debtor Bundy filed this action for protection under Chapter 7 of the Bankruptcy Code—this proceeding. The filing of the petition resulted in an automatic stay of all pending litigation, including the Utah Case.

13. St. Luke's Creditors now seek an order from this Court that lifts the automatic stay in the Utah Case, allowing St. Luke's Creditors to ask the Utah court to enforce the terms of the Permanent Injunction.

## II. LEGAL STANDARD

---

[2] This procedural history is provided for context, only. St. Luke's Creditors do not seek by this motion permission from the Court to seek discovery from Debtor Bundy in the Utah Case related to his assets or property—understanding that any discovery related to Debtor Bundy's assets and liabilities must now be pursued in this bankruptcy proceeding and/or any attendant adversary proceeding.

14. St. Luke's Creditors' request for relief from the automatic stay is governed by Section 362(d)(1) of the Bankruptcy Code, which provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause . . . .

15. The automatic stay imposed by Bankruptcy Code Section 362(a) applied to the Utah Case. The primary purpose of an automatic stay "is to protect the debtor and its estate from creditors." *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984). And, "the policy underlying the automatic stay is to protect the debtor's estate from 'the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation.'" *Id.,* at 799 (quoting *In re Frigitemp. Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981)). In some circumstances it is "appropriate to modify the automatic stay 'for cause' to permit an action to proceed before another tribunal. The term 'for cause' is not defined in the Bankruptcy Code." *Id.* The decision to lift a stay is thus one of the court's discretion. *Id.* "The moving party has the burden to show that 'cause' exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place." *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140-41 (B.A.P. 10th Cir. 2003) (citing 11 U.S.C. §§ 362(d)(1), 362(g)).

16. One of the factors courts "consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum." *Id.,* at 141. "Twelve factors were identified in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), as some of the issues a bankruptcy court might consider when

8

determining whether to lift the stay to permit pending litigation in another forum" (the "*Curtis*" factors). *Id.* The *Curtis* factors are widely used by bankruptcy courts. *Id.*

17. The *Curtis* factors are: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990). Courts only consider the relevant *Curtis* factors. *See id.*

III. ARGUMENT

18. St. Luke's Creditors, through this Motion, seek an order lifting the automatic stay so that they may ask the Utah court to enforce the Permanent Injunction to stop Debtor Bundy's ongoing defamation of St. Luke's Creditors. The Court should grant the motion because, when considering the relevant *Curtis* factors (2), (7), and (12), lifting the stay will not interfere with this case or prejudice the interests of the other creditors, and will reduce harm on St. Luke's Creditors, who are currently hamstrung by the automatic stay from obtaining further relief to stop Debtor

Bundy's continued violations of the Permanent Injunction and to require him to take down posts that violate the order.

19. ***Lifting the stay will not interfere with these proceedings.*** Permitting the Utah Case to proceed so that St. Luke's Creditors may obtain relief to enforce the terms of the Permanent Injunction against Debtor Bundy will not result in any interference in this case, which is focused on sorting through Debtor Bundy's debts and assets and giving him a fresh start as to any dischargeable debt. "Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes." *Wetmore v. Markoe*, 196 U.S. 68, 77, 25 S. Ct. 172, 49 L. Ed. 390 (1904). As in *Westmore*, Debtor Bundy "will receive a fresh start by being relieved of dischargeable debts incurred prepetition." But his bankruptcy petition does not relieve him of his responsibility to adhere to the terms of the Permanent Injunction. The fact of this proceeding and the automatic stay initiated thereby should not function as a shield for Debtor Bundy to prevent St. Luke's Creditors from protecting themselves against his continued defamation and increasingly violent rhetoric.

20. ***Lifting the automatic stay of the Utah case will not prejudice the interests of the other creditors—the federal and state tax creditors.*** By lifting the stay in the Utah case so that St. Luke's Creditors may enforce the Permanent Injunction, there will be no impact to the proceedings in this bankruptcy case to determine and order the rights of creditors to any payment from Debtor Bundy of any debts determined to be non-dischargeable. The lifting of the stay will only enable

St. Luke's Creditors an avenue to seek relief for Debtor Bundy's public statements made in violation of the Permanent Injunction—which has no bearing on the function of this Court.

21. ***The automatic stay of the Utah case harms the significant interests of St. Luke's Creditors in having a court with jurisdiction over Bundy enforce the terms of the Permanent Injunction.*** *Curtis* factor number 12 is exceedingly weighty in this instance. Debtor Bundy has consistently ignored the judicial process to avoid his wrongful conduct. All the while, he asks to receive the benefits of the judicial process—as evidenced for example, by his filing for protections and discharge of debt through this Chapter 11 proceeding. And such is his right. Yet, the judicial process also exists to enforce the rights of others.

22. St. Luke's Creditors are suffering harm and will continue to suffer harm to their own rights, independent of Debtor Bundy's rights to this bankruptcy process, if the automatic stay is not lifted in the Utah Case, where they may appropriately seek relief to enforce the Permanent Injunction. Among the factors to be considered in determining whether the automatic stay should be modified for cause are the good or bad faith of the debtor and the injury to the movant if the stay is not modified." *J E Livestock, Inc. v. Wells Fargo Bank, N.A.* (*In re J E Livestock, Inc.*), 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007). Here, Debtor Bundy continues to act in bad faith — using the shield of the bankruptcy proceeding and the automatic stay to prevent St. Luke's Parties from asking the Utah court to enforce the Permanent Injunction.

23. The stay of the Utah Case prevents the Utah court from conducting any sanctions or contempt proceedings arising out of Debtor Bundy's disobedience of court orders made before the stay issued — operative here, the Permanent Injunction. *See SEC v. Wolfson*, 309 B.R. 612, 620 (D. Utah 2004) (citing with approval *David v. Hooker, LTD*, 560 F.2d 412, 418 (9th Cir. 1977)

11

(ruling that actions to be stayed would not include contempt proceedings arising out of disobedience of an order made prior to the stay); *and SEC v. Bilzerian*, 131 F. Supp. 2d at 13-14 (finding that contempt proceedings are excepted from the automatic stay, not only under the regulatory exception, but also under the court's authority to uphold the dignity of the court and to vindicate the authority of the court to enforce its orders)). Here, the Court should lift the stay of the Utah Case and permit St. Luke's Creditors the full slate of legal options, including the ability to initiate contempt proceedings, to purse relief in that court related to Bundy's continued violations of the court-ordered Permanent Injunction.

24. St. Luke's Creditors must be afforded the opportunity to ask the Utah court to enforce the Permanent Injunction. Without such relief, the interests of St. Luke's Creditors in ensuring for their ongoing safety, as well as that of their staff, healthcare providers, and patients is at risk. *See* Exhibit A, Findings of Fact and Conclusions of law (detailing the harm to St. Luke's Creditors, and St. Luke's staff, providers and patients caused by Debtor Bundy and conspiring defendants' actions).

## IV.    CONCLUSION

25. The Court should grant St. Luke's Creditors motion to lift the automatic stay in the Utah Case under Section 362(d)(1) of the Bankruptcy Code. St. Luke's Creditors have met their burden to show that a stay is warranted because the relevant *Curtis* factors weigh heavily in their favor, especially to prevent ongoing harm. Lifting the automatic stay in the Utah Case will not interfere with this case and will enable St. Luke's Creditors to seek necessary relief from Debtor Bundy's ongoing and recently escalated acts of defamation.

DATED this 13th day of December, 2024.

        HOLLAND & HART LLP

        */s/ Erik F. Stidham*
        Erik F. Stidham (Admitted pro hac vice)
        Robert A. Faucher (Admitted pro hac vice)
        HOLLAND & HART LLP

        */s/ Engels Tejeda*
        Darren G. Reid
        Engels Tejeda
        Benjamin D. Passey

        *Attorneys for St. Luke's Health System, Ltd.,*
        *St. Luke's Regional Medical Center, Ltd.,*
        *Chris Roth, Natasha Erickson, M.D., and*
        *Tracy Jungman, NP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mark C. Rose
McKay, Burton & Thurman, P.C.
trustee@mbt-law.com

U.S. Trustee
USTPRegion19.SK.ECF@usdoj.gov

I further certify that on December 13, 2024, a copy of the foregoing was served on the following non CM/ECF registered participants by electronic mail to Ammon E. Bundy at aebundy@bundyfarms.com and by First Class Mail, U.S. postage prepaid to the following addresses:

Ammon E. Bundy
896 E 400 S
New Harmony, UT 84757

Ammon E. Bundy
P.O. Box 1062
Cedar City, UT 84721

                                            */s/ Erik F. Stidham*
                                            Erik F. Stidham

33796546_v1