Ammon Bundy
P.O. Box 1062
Cedar City, Utah
84720-1062

FILED* US Bankruptcy Court-UT
JAN 7 2025 AM 11:23

# UNITED STATES BANKRUPTCY COURT,
## DISTRICT OF UTAH

Ammon Edward Bundy      (      Case No: 24-23530
                                   (      Chapter 7
                                   (      WILLIAM T. THURMAN

---

## OBJECTION TO SECOND MOTION TO EXTEND DEADLINE FOR THE UNITED STATES TRUSTEE TO FILE A COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE

---

Ammon Edward Bundy, comes now objecting to the SECOND motion to extend the deadline for the United States Trustee to file a complaint objecting to debtor's discharge. The United States Trustee Office is now requesting a SECOND extension when they dawdled the time that the first extension gave them, meanwhile, Mr. Bundy and his family suffer under the extreme circumstances they are in.

### STATEMENT OF FACTS

1. On July 17, 2024, Mr. Bundy filed a voluntary chapter 7 petition in the above case.

3. On July 17, 2024, Mark C. Rose was appointed as the chapter 7 trustee in the case and continues to serve in that capacity.

4. The court set the FIRST deadline for October 15, 2024.

5. On September 26, 2024, the U.S Trustee Office filed a motion to extend the deadline to file a complaint objecting to the debtor's discharge.



6. On October 1, 2024, Mr. Bundy responded to the motion to extend deadline, stating, *"If they need more time to establish the honesty of Mr. Bundy, he does not object."*

7. On September 30, 2024, the Court authorized the U.S Trustee Office to subpoena Mr. Bundy and others.

8. On December 9, 2024 the U.S. Trustee Office served Mr. Bundy with a single subpoena seeking documents and scheduling an examination on January 8, 2025.

9. On December 12, 2024, Mr. Bundy responded to the U.S. Trustee office with hundreds of the requested documents and explanations (as requested) and agreed to the January 8, 2025, examination date.

10. On December 30, 2024, the U.S. Trustee Office filed a motion for a SECOND extension, requesting the court to extend the discharge date to February 16, 2025, making it (if granted) the THIRD discharge date in this bankruptcy case.

## ARGUMENTS

From the filing of bankruptcy, Mr. Bundy has worked with the U.S. Trustee Office and promptly provided them anything they have requested. All the U.S. Trustee's questions were answered by Mr. Bundy in the Meeting of the Creditor. Mr. Bundy has quickly supplied any documents that the U.S. Trustee Office has requested. All emails to Mr. Bundy from the U.S. Trustee Office have been answered straightaway.

When the U.S. Trustee Office motioned the courts to extend the FIRST discharge date, Mr. Bundy did not object.

He responded by stating:

> *"Mr. Bundy does not object to the motion to extend requested by the United States*

*Trustee Office. If they need more time to establish the honesty of Mr. Bundy, he does not object. However, he does ask the court to consider a few realities.*

*Mr. Bundy's one claimed creditor has harassed him and his family for nearly 3 years. With tens of thousands of legal documents served upon him, at times daily. The Bundy family has had their home and farm taken from them and Mr. Bundy has lost several income sources due to the acts of the creditor. Mr. Bundy's family, with multiple teenage children and younger, have been displaced, now living in a one bedroom one bathroom attic apartment, provided by a good family friend. Both Mr. and Mrs. Bundy's bank accounts have been seized by the creditor, forcing the family to function on trade and cash only. There is no practical way that Mr. Bundy can reasonably pay the $53,000,000.00 the creditor claims he owes them. Without a discharge the creditor will continue to enslave Mr. Bundy, claiming even the food and clothing he provides to his children.... Never has there been a greater need to relieve a family from the aggression of a creditor. (see Exhibit A)*

The Bundy Family's circumstances HAVE NOT improved!

In September, (4 months ago) Mr. Bundy believed that the U.S Trustee Office should be given the time to request documents and examine Mr. Bundy and others as needed. Mr. Bundy welcomed any effort the U.S. Trustee Office would take to find out the truth of Mr. Bundy's declarations and circumstances, even though every extended week equaled more suffering. However, the U.S. Trustee Office has not been responsible for the extended time the court granted them. The court authorized the U.S. Trustee Office to subpoena Mr. Bundy and others on September 30, 2024. Nevertheless, they did not subpoena Mr. Bundy until December 9, 2024, 71 days later. Now the U.S. Trustee Office is asking the court for more time. (see Exhibit B & C)

In recent communication with the U.S. Trustee Office, Attorney, Matthew Burne, wrote Mr.
Bundy the following:

> "My office has not filed any action to oppose your discharge at this time. However, the
> United States Trustee has statutory obligations to uphold the integrity of the bankruptcy
> system which includes conducting the document productions and examinations we are
> doing at this time." (see Exhibit D)

Again, Mr. Bundy applauds the U.S. Trustee Office in doing their part to uphold the integrity of
the bankruptcy system. Nevertheless, their effort now is much too late! They have delayed
seeking the information they claim is needed to make a decision whether to object to the
discharge or not. Now, in this eleventh hour they want more time to do their statutory duty.

Mr. Bundy filed the bankruptcy schedules on July 17, 2024; He filed amended A/B and C
schedules on September 3, 2024; The U.S. Trustee received all these schedules; The court set a
discharge date for October 15, 2024; September 26, 2024 the U.S. Trustee Office asked for more
time to oppose the discharge; September 30, 2024 the court granted the U.S. Trustee Office
permission to subpoena Mr. Bundy and others; October 24, 2024 the court granted them the time
they requested, setting the SECOND discharge date on January 8, 2025. However, the U.S.
Trustee Office waited until 36 days before the new discharge date to subpoena Mr. Bundy and
others, setting the production and interview date only 6 days before the discharge date. Now,
with 14 days remaining the U.S Trustee Office is asking for a THIRD discharge date. (see
Exhibits E)

The U.S Trustee Office knew when the SECOND discharge date was, being they requested the
extension. They also knew the complexity of the case; being that in their first motion to extend,
they argued, *the complexity of this case* as justification for the court to grant the extension. So,
why did they sit on their obligation to request documents for nearly two and a half months?

Meanwhile, Mr. Bundy and his family are cooped up in a one-bedroom attic apartment unable to open a bank account, living off cash charity and trade work, powerless to make any meaningful personal transaction and wondering when everything is going to be taken from them so they can get a new start.

In re James, 187 B.R. 395, 397 (Bankr. N.D. Ga. 1995) "[C]ause" should be interpreted liberally but a creditor must exhibit some minimum degree of due diligence prior to seeking the extension (emphasis added). Other courts are less liberal. See United States Trustee v. George (In re George), 2017 WL 1379321 (6th Cir. BAP 2017) (unpublished opinion) (quoting In re Vinson, 509 B.R. 128, 133 (Bankr. S.D. Ohio 2013) ("[E]xtensions of the deadline to challenge a debtor's discharge should be rarely granted and. . . . cause for such a request should be narrowly construed")); In re Nowinski, 291 B.R. 302, 305 - 06 (Bankr. S.D.N.Y. 2003) ("'[c]ause' is narrowly construed to promote the prompt resolution of the case and the implementation of the debtor's 'fresh start'" **and the court should consider**: (1) whether the moving party had sufficient notice of the deadline and information to file an objection, (2) the complexity of the case, (3) whether the moving party has exercised diligence, and (4) whether the debtor has been uncooperative or acted in bad faith). (Emphasis added)

In the case of In re Auld, 543 B.R. 676, 685 (Bankr. D. Utah 2015), rev'd on other grounds, 561 B.R. 512 (10th Cir. BAP 2017), the court denied the chapter 7 trustee's motion to extend the deadline. The court found the chapter 7 trustee had sixty days after the meeting of creditors to investigate, he did not assert that the debtor was uncooperative or failed to respond to discovery requests, and, other than stating he needed more time, the trustee had not stated any cause. **These facts closely align with those in this case.**

The U.S Trustee Office made no new argument in their SECOND motion to extend than they made in their FIRST. In-fact, their SECOND motion to extend is nearly a cut and paste copy of the FIRST.

In their motions they argue that:

1.   Debtor's financial affairs are complicated by his apparent pre-petition transfers of interests in assets, his lack of depository accounts, and his present or former interests in or control of several corporate entities;

2.   The UST has worked diligently to ascertain whether he should file a complaint objecting to Debtor's discharge;

3.   The UST questioned Debtor at his Meeting of Creditor. Debtor refused to answer numerous material questions based on his Fifth Amendment Privilege; The complexity of this case and the Debtor's refusal to answer questions at his Meeting of Creditors has required time to ascertain and analyze who subpoenas should be directed to;

4.   UST filed nineteen motions under Bankruptcy Rule 2004 to obtain additional testimony and documents from various entities and individuals believed to have business relationships with the Debtor;

5.   The UST has served sixteen Subpoenas Duces Tecum under Bankruptcy Rule 2004 many of which still have outstanding responses due;

6.   It is unlikely that the UST will receive responsive documents before the current deadline to object to Debtor's discharge. These documents are needed before examining witnesses under oath.

7.   The UST may also need to conduct further oral examinations based on the documents to be received from the subpoenaed parties and the Debtor's testimony under oath.

Mr. Bundy will address each argument by number:

1)    If the U.S Trustee Office would have been diligent in their duties and asked or

subpoenaed Mr. Bundy months ago, they would have known that Mr. Bundy participated

in no *"per-petition transfers"*; that the *"lack of depository accounts"* was court ordered

because of the creditor's litigations; and they would have known the details of

any *"present or former interest or control of several corporate entities"*. The U.S.

Trustee Office failed to subpoena anyone for 113 days after the Meeting of the Creditor

and now, they are sweating bullets to meet their obligation.

2)    The U.S. Trustee Office claims to have, *"worked diligently to ascertain whether he

should file a complaint"*. If this is the fact then why did they (he) not subpoena anyone

until 5 months into the case.

3)    Mr. Bundy answered ALL of the U.S. Trustee questions in the Meeting of the

Creditors, never once refusing to answer any question based on his Fifth Amendment

Right. In the Meeting of the Creditors the U.S. Trustee asked many questions to Mr.

Bundy in which he answered and they could have asked many more but were satisfied

with the interview and voluntarily ended the meeting. Trustee Mark Rose followed up by

email and phone with a few more questions after the Meeting of the Creditors and Mr.

Bundy promptly answered in detail every question, sending Mr. Rose many documents

including bank statements for several years. (see Exhibit F)

4)    The U.S. Trustee Office was granted permission under Bankruptcy Rule 2004

months ago but did not subpoena any of these various entities for over 70 days after the

court gave them authorization.

5)    Had the U.S. Trustee Office promptly served the sixteen Subpoenas Duces Tecum

under Bankruptcy Rule 2004 they would have received responses months ago and had

time to follow up and received additional information if needed.

6)    The reason the U.S. Trustee Office will not *"receive responsive documents before

the current deadline to object to Debtor's discharge."* is because they did not request

these documents in a timely manner.

7)   Had the U.S. Trustee Office used the time granted them by the court prudently they

would have had ample time to *"conduct further oral examinations based on the*

*documents... received from the subpoenaed parties and the Debtors testimony under*

*oath."*

## CONCLUSION

Statute and law require judicial prudence in all cases including bankruptcy. Leniency to extend is

minimal. The U.S. Trustee Office squandered over 70 days in this proceeding and did not

subpoena any person until 5 months into the bankruptcy case, leaving only 36 days until the

discharge date for responses, asking follow-up questions and to receive more answers. Mr.

Bundy has cooperated promptly with the U.S. Trustee Office. One of the primary purposes of

bankruptcy is to discharge certain debts to give an honest individual a fresh start. Mr. Bundy has

been up-front and honest in all his schedules and pleading, voluntarily sending pertinent

information to the U.S. Trustee Office even when they have not asked for it. (see Exhibit G & H)

The Bundy family has been patient and cooperative but are in great need of relief. Another

extension would further harm the Bundys and encourage additional abuse by the U.S.

Trustee Office when the court gives them sufficient time to perform their duties.


Therefore, Mr. Bundy asks the court to deny the SECOND motion to extend the deadline for the

United States Trustee to file a complaint objecting to debtor's discharge.


**DATED THIS DAY,** the 4th day of January, 2025.

Ammon Bundy

CERTIFICATE OF SERVICE

I certify that on this day I served a copy of the attached to:

UNITED STATES BANKRUPTCY COURT, DISTRICT OF UTAH

|  | 350 S Main St, Salt Lake City, UT 84101 | [X] | USPS Mail |
| Mark C. Rose, Trustee | mrose@mbt-law.com | [X] | Email |
| Erik Stidham | efstidham@hollandhart.com | [X] | Email |
| Matthew J. Burne | Matthew.Burne@usdoj.gov | [X] | Email |

**DATED THIS DAY,** the 4th day of January, 2025.

Ammon Bundy

Exhibit A – Pg 1

Ammon Edward Bundy
P.O. Box 1062
Cedar City, Utah
84720-1062

## UNITED STATES BANKRUPTCY COURT,
### DISTRICT OF UTAH

| | | |
|---|---|---|
| | ( | |
| Ammon Edward Bundy | ( | Case No: 24-23530 |
| | ( | Chapter 7 |
| | ( | WILLIAM T. THURMAN |
| | ( | |

### RESPONSE TO MOTION TO EXTEND DEADLINE FOR THE UNITED STATES TRUSTEE TO FILE A COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE UNDER 11 U.SC. 727

Ammon Edward Bundy, a Sui Juris defendant, comes now in response to the motion to extend the deadline for the United States Trustee Office to file a complaint objecting to debtor's discharge. Mr. Bundy does not object to the motion to extend requested by the United States Trustee Office. If they need more time to establish the honesty of Mr. Bundy, he does not object. However, he does ask the court to consider a few realities.

Mr. Bundy's one claimed creditor has harassed him and his family for nearly 3 years. With tens of thousands of legal documents served upon him, at times daily. The Bundy family has had their home and farm taken from them and Mr. Bundy has lost several income sources due to the acts of the creditor. Mr. Bundy's family, with multiple teenage children and younger, have been displaced, now living in a one bedroom one bathroom attic apartment, provided by a good family friend. Both Mr. and Mrs. Bundy's bank accounts have been seized by the creditor, forcing the family to function on trade and cash only. There is no practical way that Mr. Bundy

Pg. 2

can reasonably pay the $53,000,000.00 the creditor claims he owes them. Without a discharge

the creditor will continue to enslave Mr. Bundy, claiming even the food and clothing he provides

to his children. Mr. Bundy will have no choice but to physically fight back for his family and his

survival. Never has there been a greater need to relieve a family from the aggression of a

creditor.


## RELEVANT FACTS


Sometime in 2023, St. Luke's Health System, Chris Roth, CEO, Natasha D. Erikson,

M.D. and Tracy Jungman, NP, obtained an approximant $53,000,000.00 judgment against Mr.

Bundy. The jury, who determined the punitive damages were lied to several times by the St.

Luke's witnesses, prompted primarily by Erik Stidham, St. Luke's lead council. Erik Stidham's

proffers to the jury include; Ammon Bundy and Diego Rodriguez being "white nationalist" who

desire to execute St. Luke's employees for being *"traitors to the white race"*. Beside the

ridiculousness of this trail proffer, Diego Rodriguez is of Hispanic descent and his grandson

Cyrus (in which the controversy was over) is also of Hispanic descent with racially mixed

parents. Why would Ammon Bundy become associated and stand up for people of Hispanic and

mixed-race descent if he was a *"white nationalist"* as St. Luke's attorneys proffered to the jury?

Attorney Erik Stidham possesses the knowledge that Mr. Bundy and Baby Cyrus' family are

longtime friends. However, he proffered these lies to the jury and the court to unethically win a

judgment. Many other misrepresentations were hand fed to the jury; Dr. Natasha Erickson

threatening the Anderson family with CPS if they did not obey her medical demands was one of

them. Also, that Ammon Bundy was in a *"gun fight with law enforcement"*. The jury and the

Pg. 3

court were also deceived with an audio recording of Mr. Bundy that was spliced multiple times to grossly misrepresent his words. Many other misrepresentations were presented to the jury. Mr. Bundy did not have the means to defend himself against the allegations and made no appearances in the case.

Mr. Bundy knew the Anderson family before Baby Cyrus was born. He held Cyrus when he was only a few days old. He cares for Cyrus and his family very much. He knew of Cyrus' newly formed condition when eating solid foods. He was aware of all the efforts that his parents and the medical professionals were making to find a good solution to his food sensitivity. Therefore, when the Meridian Police Officer "Stephen Hansen" ripped Cyrus from his mother's arms, Ammon Bundy knew that CPS and the Meridian Police were in the wrong and that Cyrus should not be taken from his parents. Mr. Bundy also knew that Cyrus was breastfeeding and in spite of a food allergies, breastmilk was the food source that Cyrus relied on. He was concerned for Cyrus' wellbeing when he was separated from his mother. It made no sense that Meridian Police (who claimed they were taking Cyrus for *"his well-being"*) would forcefully separate him from his primary source of nutrition and care, his mother!  Mr. Bundy, as a father of six children and one grandchild, is vehemently opposed to the state taking children from any loving and caring parent. If the police were really concerned for Cyrus' wellbeing, they would have kept his mother with him. It is a systematic arrogant indoctrination that causes a person to believe the state can care for a child better than his loving parents. Only an institutionalized stooge would believe such a thing. Stooges like the people we read about in 1930's Germany. Ammon Bundy did not come to the defense of the Anderson family to *"gain money"* or to get *"publicity for himself"* as the St. Luke's parties shamefully proffered to the jury.  He came to the defense of the

Pg. 4

family to get Cyrus out of the hands of institutionalized stooges and back to his loving and caring
parents where he belonged.

St. Luke's Plaintiff's, manipulated by lead attorney Erik Stidham (Holland & Hart), have
defamed Mr. Bundy numerous times by claiming that he accused them of *"widespread
kidnapping, trafficking, sexual abuse and killing of Idaho Children"*. Mr. Bundy denies ever
saying such things. Mr. Bundy has challenged the St. Luke's parties and others to produce
evidence that he has said such things. No evidence has been produced to this date. Diego
Rodriguez has made relative claims, but Ammon Bundy has never accused the St. Luke's parties
of engaging in *"widespread kidnapping, trafficking, sexual abuse and killing of Idaho Children"*
as Erik Stidham and the St. Luke's parties misrepresented to the jury. Mr. Bundy has pointed out
many times that the Idaho Department of Health and Welfare receives significant federal funds
when they take a child from his or her parents. St. Luke's Health System billed the state and
federal governments at least $30,000 for the few days of "care" they gave Cyrus. Mr. Bundy
takes issue with institutions like the Idaho Department of Welfare (CPS) and St. Luke's Health
System financially benefiting when they take a child from his or her parent(s). Financial gain is a
powerful and long-lasting motivation, especially to large institutions that seek consistent revenue
streams. That being said, Mr. Bundy has never said or claimed that the St. Luke's Health
System, *"engaging in widespread kidnapping, trafficking, sexual abuse, and killing of Idaho
children"*. These lies about Mr. Bundy were told by St. Luke's attorneys to sway the public and
the jury against him. It is a lie that the St. Luke's parties continue to spew to this day. Beside the
taking of Baby Cyrus and a few other incidences where St. Luke's Health System participation in
removing children from loving parents and St. Luke's Health System's participation in sex

**Pg. 5**

change surgeries on minors, Mr. Bundy does not have evidence of St. Luke's engaging in the widespread harming of children.

Because Mr. Bundy & Diego Rodriguez (Cyrus' grandfather) publicly spoke out about Cyrus being taken from his parents, including St. Luke's involvement. St. Luke's parties sued them. This type of lawsuit is prohibited in most states. SLAPP suites are intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition. The Idaho courts allowed this lawsuit to continue to the detriment of free speech in Idaho. The Idaho legislators stood by as silent witnesses to this lawsuit and the chilling effect it had on freedom of speech. The people of Idaho should be protected when they speak out against large institutions like St. Luke's Health System. Instead, they are left to wonder if they too would be hung to dry in the courts if they also voiced their apprehensions with any large institution.

In open corruption and in violation of the Idaho Rules of Civil Procedure, a $53 million dollar judgement was obtained against Mr. Bundy. The presiding judge, Lynn Norton, was personally motivated to destroy any influence Mr. Bundy had in Idaho. Her husband, Bundy learned later, is a highly paid employee of the Bureau of Land Management. The same agency that came after the Bundy Family in Nevada and the Hammond Family in Oregon. The same agency that had Bundy, his brothers and father, and others arrested and thrown in federal prison for TWO years without any convictions! The same agency caught red-handed lying to the court and reprimanded for prosecutorial misconduct. Finally, they were forced to release the Bundy defendants as innocent men, allowing them to return to their families.

Pg. 6

The fact that Judge Norton did not recuse herself, knowing her own bias, is proof of the Ada County court's corruption. Many of Lynn Norton's colleagues in the court must have known her and her husband's conflicted connections to the Bundy family. Yet, none of them mention it until after a judgement was secured and the connection was exposed. To this day, the Idaho courts have done nothing with the evidence of this corruption.

<u>The judgment against Ammon Bundy will never be just and God will be the final judge!</u>

## **PRECAUTIONS**

St. Luke's executives and attorneys have publicly misrepresented Mr. Bundy's beliefs many times. Using their misrepresentation, they justify themselves in defaming and damaging Mr. Bundy and his family. Therefore, as a matter of precaution Mr. Bundy outlines his political beliefs so the court may have a clear understanding.

    1)   Mr. Bundy believes that Jesus Christ is the creator of the universe and that He created all men equally. That all men are given by their Creator certain rights that should not be infringed upon. These rights are the right to life, liberty to act freely and the right to pursue happiness, including the right to own and control property without fear of compulsion.

    2)   Mr. Bundy believes that governments were instituted by men for the purpose of securing the rights their Creator has equally given them; and that God, their Creator,

Pg. 7

holds men accountable for their acts in government, both in making laws and in administering them.

3)   Mr. Bundy believes that no government can exist in peace except laws are framed and upheld as to secure to each individual the free exercise of conscience, the right and control of property, and the protection of life.

4)   Mr. Bundy believes that all men are subject to the laws of nature and the supreme laws of their Creator, and that their actions, good or evil, will be rewarded or punished by that same Creator.

5)   Mr. Bundy believes a man should be free to do all things as his conscience will allow, unless his actions infringe upon the rights and liberties of another person, and that no government officer(s) or person(s) should restrain otherwise.

6)   Mr. Bundy does not believe that human law has a right to interfere in prescribing rules of worship to bind the consciences of men; that civil magistrates should restrain crime, but never control conscience; should punish guilt, but never suppress freedom.

7)   Mr. Bundy believes in the necessity of laws being in place for the protection of the innocent and the punishment of the guilty (those who infringe upon individual rights); and to those Constitutional laws supporting the principles of freedom maintaining the rights belonging to all mankind, he believes, all men owe respect and deference, as without them peace and harmony would be supplanted with tyranny and/or anarchy.

8)   Mr. Bundy believes that crime (the infringement of individual rights) should be punished according to the nature of the offense; that murders, robbers, thieves in all

Pg. 8

respects, should be punished according to their criminality by the laws of that government in which the offense is committed.

9)   Mr. Bundy believes that men should appeal to the civil law for redress of wrongs and grievances, where personal abuse is inflicted or the right of property infringed, but he believes that all men are justified in defending themselves, their families, their friends, and property, from the unlawful assaults and encroachments of all persons, including those who act in the color of law.

10) Mr. Bundy believes that whenever any form of government becomes destructive to the life, liberty and property of men and women, it is the right of the people to alter or to abolish that government and to institute new government, organizing its powers as to most likely affect the safety of the rights given to them by their Creator.

11) Mr. Bundy believes that when a long train of abuses and usurpations are pursued by those in government as a design to reduce the people under despotism, it is the right of the people, it is their duty, to separate from such government, and to provide new guards for their future security.

## THE BUNDY FAMILY'S CONDITION

In November 2023, Ammon Bundy and his family, due to St. Luke's litigation, urgently abandoned their home in Idaho and moved to New Harmony, Utah. With one child married and another serving a full time mission in Washington D.C for the Church of Jesus Christ of Latter-Day Saints, Ammon, Lisa Bundy and their remaining four children (at the graces of a lifelong

Pg. 9

friend) moved to a one bedroom, one bathroom attic apartment. All six have now lived there for

10 months.

Mr. Bundy's hope was that the Idaho establishment, including the St. Luke's executives

would be satisfied with driving him out of Idaho and taking everything he owned. That they

would leave him alone and allow him and his family to rebuild their lives once they had

financially ruined him and compelled him to leave the state. However, for motives that are

unclear, they have pursued him with even more vigor. Retaining 6 teams of attorneys in 5 states,

litigating against him in 9 different courts, not including this court. Even after he offered them

everything he and his family owned for peace.

Before and after the judgement, Mr. Bundy reached out to the St. Luke's executives and

offered to give them everything he owned for peace. He said; *"I have officially made offers to*

*the executives of St. Luke's five times now. The latest offer was made a little over a month ago. I*

*sincerely offered to give them everything I own and anything I had influence over, totaling $3.5*

*million - $5 million. That I would give it to them for peace. I offered them everything, even the*

*clothing in my children's closets. All I wanted in return was peace. However, each time they*

*have rejected my offers and responded with heavy pursuits in the courts."* One must wonder

what it is they want? Except for his family, his liberty, and his life, what more could Mr. Bundy

offer them?

With the judgement, St. Luke's attorneys have taken Ammon and Lisa Bundy's home,

seized their bank accounts, driven them out of Idaho, dismantled their commercial property

**Pg. 10**

business, and locked up Bundy's personal and business assets. St Luke's executives and

attorneys, paid by tax-payer dollars, have seized over $4 million from the Bundy

family. Furthermore, they convinced a judge to issue a $250,000 warrant for Bundy's arrest,

claiming that he had not obeyed the gag order in the case.

　　　　In the last few months, St. Luke's attorneys have continued to file hundreds of court

documents against him and Lisa. They also obtained a ruling that restricts Ammon & Lisa

Bundy from owning or controlling a bank account. All of their efforts are directed to harass and

destroy the Bundy family's peace and future.

　　　　Contrary to the corporate media reports over the past decade, Mr. Bundy has maintained

peace in all his efforts to stand up for others. Never has he been anything but

peaceful. Speaking on this topic, he said, *"I have spent the last decade trying to disprove those*

*that believe violence is the only way. In this current dispute, I left my home, my community, my*

*living, nearly everything, for peace. My family and I now live in a one-bedroom attic*

*apartment. I work for cash just to keep food on the table. All of this, right or wrong, is because I*

*have taken the path of peace."*

　　　　Mr. Bundy goes on, *"I am not naïve to the fact that I could have rallied thousands of*

*people to protect me and my home from the immoral action of these modern-day robbers. I have*

*done this for others in the past. But, sooner or later, violence from those who are "only doing*

*their job" would have ensued. Their masters must be obeyed and to them the people are*

*despicable dogs that must be beaten once-in-a-while to keep them in line. As a people we have*

**Pg. 11**

*become desperately weak. I weighed these facts many times over and ultimately decided that my*

*home, my wealth, and even my community was worth leaving for peace.  It broke our hearts, but*

*we left it all."*

      Bundy further said, *"What do they want? It must be my liberty or my blood, or maybe*

*they want Lisa and my children to completely break down from hardship and leave me. What*

*else could they want?  I have offered them everything else. The St. Luke's parties with the*

*assistance of their attorneys will take even the food out of my children's mouths if they could.*

*They have no intention of allowing me to provide for my family again. In their view, I am their*

*plantation worker, their slave; anything I do, any wealth I create, any effort I make, they believe*

*belongs to them."* Even Mrs. Bundy could not get a job without St. Luke's executives garnishing

everything she made. Without a bankruptcy discharge the Bundy family will be left with only

three options: 1) Survive on cash and under the table jobs while being harassed by St. Luke's

executives and attorneys for the rest of Mr. and Mrs. Bundy's lives. 2) Leave the country and try

and start over in a foreign land. 3) Rally friends and family in open defense of Mr. Bundy's rights

to live, to be free and to own property.

      This bankruptcy is not about finances, as Mr. Bundy has been responsible with his

finances and has no debt besides the $53,000,000.00 that St. Luke's executives are claiming he

owes them due to the things he said about them taking a baby from loving and caring parents.

This bankruptcy, however, is about an honest person seeking relief from a vindictive

political   institution who has grossly abused the courts. As stated on the U.S. Bankruptcy

website, *"One of the primary purposes of bankruptcy is to discharge certain debts to give an*

Pg. 12

*honest individual debtor a "fresh start."* Never has there been a greater need to relieve a family

from the aggression of a creditor than in this case!

## RESPONSE & CLARIFICATIONS TO THE U.S. TRUSTEES CLAIMED FACTS

I.        1. – 5.    No response needed

6.  In this section of the proffered facts presented to the court, a United States

Trustee's attorney stated that, *"An Idaho Statesman Article indicated that an attorney*

*representing St. Luke's Health System has asserted that Debtor [Mr. Bundy] was a*

*multi-millionaire at the time of the verdict in favor of St. Luke's Health System."* It

can't get more loose than that. A U.S. Trustee Attorney read an article from a liberal

Idaho news outlet that *"indicated"* an attorney working for the people who sued Mr.

Bundy *"asserted"* that Mr. Bundy was a multi-millionaire at the time of the verdict. I

hope this is not what the Trustees office meant when stating they, *"obtained*

*information from a public record database regarding Debtors financial situation."*

7.  The disclosure statement of Mr. Bundy in the financial affairs questions relating

to his home valued at 1.4 million, should stand as a testimony that Mr. Bundy is an

honest participant in this bankruptcy case.

8.  One of the increasing hardships of the Bundy family has been that any and all

bank accounts that Ammon or Lisa Bundy had, have been seized by St. Luke's Health

System, beginning in November of 2023. This includes all corporate bank accounts

that Mr. Bundy had control of. The Bundy family has been forced to work on a

primary cash or trade system to feed, clothe and house the family since.

Pg. 13

9. Mr. Bundy does not recall stating that Dono Costo, Inc or Bundy Farms, Inc.
ended in June of 2024. Both of those companies have been dissolved or not renewed
for some time. As for Abish-hubondi, Inc. it is Mr. Bundy's understanding that St.
Luke's took over Abish-husbondi, Inc. by mis-claiming all the shares, and that Abish-
husbondi, Inc. shares were transferred to a St. Luke's Company on June 28, 2024. Mr.
Bundy owned 20,000 Abish-husbondi, Inc. shares before June 2024. As for the
ownership percentage listed in the A/B Schedules for Abish-Husbondi Inc. Mr.
Bundy did not understand the proper way to calculate ownership of a C corporation
until his accountant recently explained it to him. Mr. Bundy intends to amend the A/B
Schedule again based upon this information. Because Dono Costo, Inc and Bundy
Farms Inc. have been inactive for some time now, Mr. Bundy did not claim any
shares or ownership. Mr. Bundy does not have any *undisclosed interest in other
corporate entities, joint ventures, or partnerships.*

10.     No response needed

11.     It is the opinion of Mr. Bundy that the presented facts about the creditors
meeting have been misrepresented to the court. Mr. Bundy answered every question
that Trustee attorney Mark C. Rose and the others attending U.S. Trustee attorney
asked. Mr. Bundy did assert his Fifth Amendment Right several times when
questioned by St. Luke's council. As a matter of statutory privilege, the U.S.
Trustee's Office never granted Mr. Bundy immunities (if they had authority to do so),
nor did the court require or approve any questions to be answered. Mr. Bundy was
fully within his right to invoke his Constitutional protection not to be a witness
against himself. As a matter of information, St. Luke's council has filed numerous

Pg. 14

motions in several courts seeking to criminally charge Mr. Bundy in relation to his

right to free speech, causing multiple warrants and arrests relating to the lawsuit. Mr.

Bundy has every reason to believe that St. Luke's attorneys will use any information

they can to harm and damage him, including seeking more frivolous criminal charges

against him. Mr. Bundy intends to invoke the Fifth on any question that can (and

most likely will) be used against him.

12.    As explained in response 8. Mr. Bundy and his family have been reduced to

running their finances on a cash basis due to St. Luke's Health System seizing their

bank accounts. It should be no surprise that from July 17, 2024 to September 3, 2024

the Bundy family's "cash" amount changed by $1,500. The same would be true for

the account receivables or commissions declared on the A/B Schedule.

13.    Sounds like the U.S. Trustee Office is planning on going fishing. That is fine

with Mr. Bundy, but if they fish in a pond with no fish, they are bound to catch

nothing. Unless of course they put a fish in the pond themselves. U.S. Attorneys in

Mr. Bundy's experience have been known to do such things. Which is another reason

Mr. Bundy intends to keep the Fifth close by. Mr. Bundy has been involved in several

business ventures in his life. He has been an entrepreneur for over 35 years and hopes

to continue after the court discharges the St. Luke's claim.

14.    No response needed.

15.    Mr. Bundy is eager to hear about these 17 entities that are mentioned.  Maybe he

has been more of an entrepreneur than even he knows. When Mr. Bundy was

attending Virgin Valley High School he started his first business, fabricating horse

corrals for people in the community. He discontinued the business when he graduated

**Pg. 15**

in 1993 over 31 years ago. Mr. Bundy wonders if this is one of the 17 entities that the U.S. Trustee Office will seek to examine and/or obtain documents from.

16.  St. Luke's attorneys (Holland & Hart) will file thousands of documents and motions in this case if this court allows. They have access to an immense amount of public funds and are being paid thousands of dollars an hour to litigate against Mr. Bundy.  Mr. Bundy has filled dumpsters full of Holland & Hart documents.  If this court does not stop them St. Luke's council will continue to harass and harm the Bundy family indefinitely.

### CONCLUSION

Mr. Bundy has promptly provided every document and information that the U.S Trustee Attorneys have requested. The U.S. Trustee's Office has had sufficient time to request additional information from Mr. Bundy and they have not. This case is not complex. Mr. Bundy is not jointly filing, he has only one creditor and has interest in only one active entity. Any other entities Mr. Bundy has been involved in are inactive or dissolved as easily found on public record. All the speculations of Mr. Bundy having interest in other entities is just that, speculation. Mr. Bundy and his family will be patient with the U.S. Trustee's Office if the court grants their motion to extend. However, they pray that the time for relief will come soon.

**DATED THIS DAY,** the 1st of October, 2024.

Ammon Bundy

Pg. 16

| CERTIFICATE OF SERVICE

I certify that on this day I served a copy of the attached to:


UNITED STATES BANKRUPTCY COURT, DISTRICT OF UTAH

|  | 350 S Main St, Salt Lake City, UT 84101 | [X] | USPS Mail |
| Mark C. Rose, Trustee | mrose@mbt-law.com | [X] | Email |


**DATED THIS DAY,** the 1st of October, 2024.

Ammon Bundy

Exhibit B

**This order is SIGNED.**

**Dated: September 30, 2024**   *William J. Thurman*   

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

msc

---

*Order prepared by:*
David W. Newman (USB #15901)
Assistant United States Trustee
Matthew J. Burne (USB #18605)
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
Facsimile: (801) 524-5628
E-mail: David.W.Newman@usdoj.gov
E-mail: Matthew.Burne@usdoj.gov

Attorneys for Patrick S. Layng
United States Trustee, Region 19

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| In re: | Bankruptcy Case No. 24-23530 |
| AMMON EDWARD BUNDY, | Chapter 7 |
| Debtor. | Hon. William T. Thurman |

---

**ORDER AUTHORIZING THE UNITED STATES TRUSTEE TO CONDUCT AN
EXAMINATION OF AMMON EDWARD BUNDY PURSUANT TO FEDERAL RULE
OF BANKRUPTCY PROCEDURE 2004**

Upon the Court's consideration of the *Ex-Parte* Motion for an Order Authorizing United

States Trustee to Conduct an Examination of Ammon Edward Bundy ("Debtor") in his individual

capacity and as a representative of all entities he owns or controls (or which he owned or controlled

Exhibit C - Pg.1

David W. Newman (USB #15901)
Assistant United States Trustee
Matthew J. Burne (USB #18605)
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
Facsimile: (801) 524-5628
E-mail: David.W.Newman@usdoj.gov

Attorneys for Gregory W. Garvin
Acting United States Trustee, Region 19

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH

| In re:<br><br>AMMON EDWARD BUNDY,<br><br><p align=center>Debtor.</p> | Bankruptcy Case No. 24-23530<br>Chapter 7<br><br>Hon. William T. Thurman |
|---|---|

### NOTICE OF ISSUANCE OF SUBPOENA

The Acting United States Trustee hereby gives notice that he has issued the attached

subpoena as follows:

 Subpoena for Oral Examination:

Ammon Edward Bundy

The subpoena is attached hereto and incorporated herein by this reference.

Pg. 2

Date: December 9, 2024                    ACTING UNITED STATES TRUSTEE
                                          Gregory W. Garvin


                                          By: /s/ David W. Newman
                                          David W. Newman
                                          Attorney for the Acting United States Trustee

2

Pg. 3

## CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (EM/ECF)

I hereby certify that on December 9, 2024, I caused the foregoing document to be electronically filed with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **Matthew James Burne**    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Robert A. Faucher**    rfaucher@hollandhart.com, spturner@hollandhart.com
- **George B. Hofmann**    ghofmann@ck.law, mparks@ck.law
- **David W. Newman tr**    david.w.newman@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Benjamin David Passey**    bdpassey@hollandhart.com, phowell@hollandhart.com
- **Darren G. Reid**    dgreid@hollandhart.com, cfries@hollandhart.com
- **Mark C. Rose tr**    trustee@mbt-law.com, UT32@ecfcbis.com
- **Erik F. Stidham**    efstidham@hollandhart.com, dljenkins@hollandhart.com;boiseintaketeam@hollandhart.com
- **Engels Tejeda**    ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;lahansen@hollandhart.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov

## CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS

I hereby certify that on December 9, 2024, I caused a copy of the foregoing document to be uploaded to BMC Group, Inc., an approved bankruptcy notice provider, to be sent by first class mail to the parties listed below. Pursuant to the BMC Group, Inc.'s terms of service, documents uploaded for service will be mailed out within one business day of being uploaded.

**Mail Service: First-class U.S. mail, postage pre-paid, addressed to:**

**Ammon Edward Bundy**
P.O. Box 1062
Cedar City, UT 84721

**Lisa M. Bundy**
P.O. Box 1062
Cedar City, UT 84720-1062

**Jennifer M Jensen**
Holland & Hart, LLP
800 West Main Street, Suite 1750
Boise, ID 83702

Date: December 9, 2024                    /s/ David W. Newman

3

Pg. 4

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/12)

# UNITED STATES BANKRUPTCY COURT

_____ District of __Utah__ _____

In re __Ammon Edward Bundy__                    Case No. __24-23530__
                    Debtor

                                                Chapter __7__

## SUBPOENA FOR RULE 2004 EXAMINATION

To: __Ammon Edward Bundy__
_____
                    *(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE Zoom link to be provided by Behmke Reporting and Video Services, Inc. | DATE AND TIME Wednesday, January 8, 2025 at 9:00 A.M. |
|---|---|

The examination will be recorded by this method: __Stenographic Means__

☐ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __December 9, 2024__

         CLERK OF COURT

                                        OR    DAVID NEWMAN    Digitally signed by DAVID NEWMAN Date: 2024.12.09 11:17:40 -07'00'
                                              /s/
_____                  _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__United States Trustee__ _____ , who issues or requests this subpoena, are:

David W. Newman, Office of the United States Trustee, 405 South Main Street, Washington Federal Bank Building, Suite 300, Salt Lake City, UT 84111, David.W.Newman@usdoj.gov, (801) 524-5149

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Pg. 5

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**This order is SIGNED.**

**Dated: September 30, 2024**     *William J. Thurman*



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

msc

---

*Order prepared by:*
David W. Newman (USB #15901)
Assistant United States Trustee
Matthew J. Burne (USB #18605)
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
Facsimile: (801) 524-5628
E-mail: David.W.Newman@usdoj.gov
E-mail: Matthew.Burne@usdoj.gov

Attorneys for Patrick S. Layng
United States Trustee, Region 19

---

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 24-23530 |
| AMMON EDWARD BUNDY, | Chapter 7 |
| Debtor. | Hon. William T. Thurman |

---

### ORDER AUTHORIZING THE UNITED STATES TRUSTEE TO CONDUCT AN EXAMINATION OF AMMON EDWARD BUNDY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon the Court's consideration of the *Ex-Parte* Motion for an Order Authorizing United States Trustee to Conduct an Examination of Ammon Edward Bundy ("Debtor") in his individual capacity and as a representative of all entities he owns or controls (or which he owned or controlled

in the past) pursuant to Rule 2004 of the Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") and good cause appearing:

IT IS HEREBY ORDERED that the United States Trustee is authorized to conduct the examination of Ammon Edward Bundy pursuant to Bankruptcy Rule 2004, by Subpoena Duces Tecum, and/or by oral examination, to the extent necessary, either in person at the office of the United States Trustee or via video conference to be facilitated by Behmke Reporting and Video Services, Inc. The proceedings will be recorded by stenographic means and will continue until adjourned. The recording of the examination shall only be transcribed upon request and payment of the transcription costs shall be by the requesting party;

IT IS FURTHER ORDERED that, unless otherwise stipulated in writing, Ammon Edward Bundy will receive not less than 14 days written notice of the examination and date for production of documents; and

IT IS FURTHER ORDERED that the United States Trustee may issue subpoenas to compel attendance and production of documents pursuant to Bankruptcy Rule 2004(c).

----------------------------------END OF DOCUMENT----------------------------------

Pg. 8

## DESIGNATION OF PARTIES TO BE SERVED

Service for the foregoing order shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below are registered CM/ECF users and will be served notice of entry of the foregoing order through the CM/ECF system:

- Matthew James Burne    matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Robert A. Faucher    rfaucher@hollandhart.com
- Benjamin David Passey    bdpassey@hollandhart.com, phowell@hollandhart.com
- Darren G. Reid    dgreid@hollandhart.com, cfries@hollandhart.com
- Mark C. Rose tr    trustee@mbt-law.com, UT32@ecfcbis.com
- Erik F. Stidham    efstidham@hollandhart.com, dljenkins@hollandhart.com;boiseintaketeam@hollandhart.com
- Engels Tejeda    ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;lahansen@hollandhart.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed R. Civ. P. 5(b).

Ammon Edward Bundy
P.O. Box 1062
Cedar City, UT 84721

Ammon Edward Bundy
896 E. 400 S.
New Harmony, UT 84757

Date: September 27, 2024

/s/ *Matthew J. Burne*
Matthew J. Burne

3

Exhibit D



---

## Rule 2004 Examination and Extension of Deadline

---

**Burne, Matthew (USTP)** <Matthew.Burne@usdoj.gov>                    Thu, Jan 2, 2025 at 7:13 AM
To: Ammon Bundy <aebundy@bundyfarms.com>
Cc: "Newman, David W. (USTP)" <David.W.Newman@usdoj.gov>, "Huston, Lindsey (USTP)"
<Lindsey.Huston@usdoj.gov>

Good morning Mr. Bundy,

My office has not filed any action to oppose your discharge at this time. However, the United States
Trustee has statutory obligations to uphold the integrity of the bankruptcy system which includes
conducting the document productions and examinations we are doing at this time.



Respectfully,

*Matthew J. Burne*

Trial Attorney

U.S. Department of Justice

Office of the United States Trustee

405 S. Main Street, Suite 300

Salt Lake City, Utah 84111

Office (801) 524-5736

Mobile (202) 306-3773

This message and any attachments are intended only for the addressee and may contain information that is privileged, "Limited
Official Use," or "Sensitive But Unclassified." If the reader of this message is not the intended recipient, then any dissemination
of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by
replying to this e-mail or by telephone at the number above, and delete the message and any attachments from your system. Thank
you.