George Hofmann (10005)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Mark C. Rose,
Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| In re<br><br>AMMON EDWARD BUNDY,<br><br>Debtor. | **COMPLAINT**<br><br>Bankruptcy No. 24-23530 (WTT)<br><br>Chapter 7 |
| MARK C. ROSE, in his capacity as Chapter 7 Trustee of Ammon E. Bundy,<br><br>Plaintiff,<br><br>-vs-<br><br>ABISH HUSBONDI, INC., AMMON EDWARD BUNDY, LISA BUNDY, and GLOBAL TRADING & INVESTMENTS, INC.,<br><br>Defendants. | Adv. Pro. No. 25-XXXXX |

Mark C. Rose (the "Trustee"), in his capacity as the duly appointed Chapter 7

trustee of Ammon Edward Bundy, brings this action against Abish Husbondi, Inc.

("Abish"), Ammon E. Bundy (the "Debtor"), Lisa Bundy ("Ms. Bundy"), and Global

1

Trading & Investments, Inc. ("GTI") (collectively, the "Defendants"), and for causes of action, alleges as follows:

## NATURE OF THE CASE

1. This Complaint seeks to avoid and recover from the Defendants, or from any other person or entity for whose benefit the transfer was made, all avoidable transfers of property made to or for the benefit of the Defendants by the Debtor before and after the Debtor's July 17, 2024 petition date (the "Petition Date") under Bankruptcy Code §§ 362, 363, 542, 544, 547, 548, 549 and 550. To the extent that the Defendants have filed a proof of claim or have a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtor or the Debtor's estate (collectively, the "Claim"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to such Claim for any reason, including, but not limited to, Bankruptcy Code § 502(a) through (j) ("Section 502"), and such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to Section 502 is sought by the Trustee in this Complaint as stated below.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

5. The Trustee is the duly appointed, qualified, and acting Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate").

6. The Debtor is an individual residing in the State of Utah and is a chapter 7 debtor in Bankruptcy Case No. 24-23530 (the "Bankruptcy Case").

7. Lisa Bundy is an individual residing in the State of Utah and is the Debtor's wife.

8. Abish Husbondi, Inc. is upon information and belief a Wyoming corporation that is or was wholly owned by the Debtor.

9. Global Trading & Investments, Inc., is an Idaho corporation.

## BACKGROUND

10. On or about July 1, 2019, the Debtor and the Debtor's wife, Ms. Bundy, entered into a *Loan Agreement dated July 1, 2019* (the "Loan Agreement") with Jane Valenzuela (the "Borrower"), for the principal amount of $482,500.00 plus interest on the unpaid principal at the rate of 9.75% per annum (the "Loan").

11. The Loan Agreement related to the sale by the Debtor and Ms. Bundy of certain real property located at approximately 5245 W. Dobbins Rd., Laveen, AZ 85339 (the "Real Property").

12. Under the Loan Agreement, the Loan was secured by the Real Property. Essentially, the Loan Agreement was a form of seller financing to Borrower.

13. The Debtor has unpaid creditors whose debts stem from events in March 2022, including:

      a. Tracy Jungman

      b. Natasha Erickson

      c. St. Luke's Regional Medical Center

      d. St. Luke's Health System; and

      e. Chris Roth

14. The Debtor ran for governor of Idaho in 2022.

15. During that time, he met an individual named Tony Branson, who owns or owned GTI.

16. On information and belief, in or around the Fall of 2022, the Debtor requested that Borrower pay the Loan to GTI instead of to the Debtor and Ms. Bundy.

17. On or about November 28, 2022, the Debtor and Ms. Bundy executed an Assignment of the Loan Agreement to GTI (the "Loan Assignment").

18. On information and belief, no consideration was paid by GTI to the Debtor or Ms. Bundy with respect to the Loan Assignment.

19. In late 2023 or early 2024, the Borrower refinanced the Loan Agreement, resulting in a payment of $507,167.36 to GTI.

20. On January 5, 2024, the Debtor and Ms. Bundy executed an *Estopped Certificate, Release & Waiver* (the "Estoppel Certificate"). In relevant part, the Estoppel Certificate states:

      a. Global Trading & Investments, Inc., an Idaho corporation (**"GT&I"**) is in possession of certain funds belonging to Ammon E. and Lisa M. Bundy (collectively **"Bundy"**). GT&I and its principals desire to distribute the funds to Bundy (or to such party or parties as Bundy directs) and upon distributions be released of any further liability with regards to said funds.

    b. **Waiver of Accounting.** Bundy waives any further accounting of the funds. Upon receipt of the signed release GT&I shall cause to be disbursed to Abish-husband, Inc., the sum of $487,167.36 ($507,167.36473,000 less $$20,000.00).

    c. **Estoppel Certificate.** Bundy understands and agrees that by executing this instrument that GT&I and its agents are relying on the Bundy's representation in this instrument in making the distribution as directed by Bundy, instead of interpleading the funds into a court to obtain court approval Bundy understands and agrees that if they sign this instrument, they will be forever estopped from challenging this instrument in any fashion[.]

21. On January 25, 2024, GTI wired funds in the amount of $487,167.344 (the "Bundy Home Sale Proceeds") to a bank account held in the name of Abish.

22. On February 25, 2025, the Debtor attended a Rule 2004 examination (the "2004 Exam") conducted by certain creditors in the Debtor's Case.

23. During the 2004 Exam, the Debtor testified that he had approximately $200,000 in cash "in my possession" (the "Cash").

24. On information and belief, the Cash derives from, or is part of, the Bundy Home Sale Proceeds.

25. According to the Debtor, the Cash is purportedly the property of Abish.

26. According to the Debtor, Abish also purchased and remains in possession of approximately $215,000 in "materials, intellectual property, and a domain" and possibly trucks or other equipment (the "Miscellaneous Assets").

27. The Miscellaneous Assets were purchased from the Bundy Home Sale Proceeds.

28. There are several "badges of fraud" evident from the facts above,

5

including that:

    a. the transfers were to insiders;

    b. the Debtor retained possession or control of the property transferred after the transfer;

    c. the transfers were concealed;

    d. the transfers were made after the Debtor had been sued;

    e. the transfers were of a substantial part of the Debtor's remaining assets;

    f. the Debtor absconded;

    g. the Debtor removed and concealed assets;

    h. the Debtor was insolvent when the transfers occurred; and

    i. the transfers occurred after a substantial debt was incurred.

### FIRST CAUSE OF ACTION
(Turnover of Cash and Miscellaneous Assets – Bankruptcy Code § 542 – All Defendants)

29.    The Trustee incorporates by reference all preceding paragraphs of this Complaint.

30.    The Cash and Miscellaneous Assets are property of the Estate.

31.    To the extent the Defendants or any one of them have possession, custody, or control of Cash and Miscellaneous Assets, or any of it, the Cash and Miscellaneous Assets must be turned over to the Trustee pursuant to Bankruptcy Code § 542.

4916-1364-0736, v. 2

**SECOND CAUSE OF ACTION**
(Declaratory Judgment Under 28 U.S.C. § 2201 that Ms. Bundy
Has No Interest in at Least Half of the Bundy Home Sale Proceeds)

32. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

33. Arizona and Idaho are community property states, such that the assets acquired during the course of a marriage are considered to be available for collection by creditors of either spouse.

34. The Bundy Home Sale Proceeds arise from and are proceeds of the sale of real property in Arizona.

35. The Loan Agreement was executed at a time when the Debtor and Ms. Bundy lived in either Idaho or Arizona.

36. An actual dispute or justiciable controversy exists between the Trustee and Ms. Bundy regarding whether Ms. Bundy has a valid claim to: (i) any of the Bundy Home Sale Proceeds; or (ii) an amount no greater than one-half (1/2) of the Bundy Home Sale Proceeds, and/or whether the Bundy Home Sale Proceeds (or their proceeds) are property of the Estate.

37. The Trustee's interests are adverse to those of Ms. Bundy.

38. The Trustee has a legal protectable interest in the Bundy Home Sale Proceeds (or their proceeds).

39. The proceeds of the Bundy Home Sale Proceeds include the Cash and the Miscellaneous Assets.

40. The issues raised in this dispute or justiciable controversy between the

Trustee and Ms. Bundy are ripe for judicial determination.

41. The Court should declare that Ms. Bundy does not hold a valid claim or other interest in or against the Cash, the Miscellaneous Assets, and any other proceeds of the Bundy Home Sale Proceeds.

42. By virtue of the foregoing, the Court should declare that the Cash, the Miscellaneous Assets, and any other proceeds of the Bundy Home Sale Proceeds are assets of the Estate.

### THIRD CAUSE OF ACTION
(Preferential Transfer–Bankruptcy Code § 547 - Abish)

43. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

44. The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 17, 2024.

45. The transfer of the Bundy Home Sale Proceeds to Abish occurred on January 25, 2024 (the "Transfer").

46. The Debtor is, or was, the President of Abish at all times relevant to this Complaint.

47. The Debtor is, or was, an owner of Abish at all times relevant to this Complaint.

48. Abish is, or was, an "insider" of the Debtor at all times relevant to this Complaint.

49. Through its receipt of the Transfer, Abish received a transfer of the Debtor's property within the one-year preference period for insiders.

8

50. To the extent that the Debtor or Abish assert and can prove that Abish was a creditor of the Debtor at the time of the Transfer, the Transfer was to or for the benefit of an "insider" creditor of the Debtor.

51. To the extent that the Debtor or Abish assert and can prove that Abish was a creditor of the Debtor at the time of the Transfer, the Transfer was for or on account of an antecedent debt owed by the Debtor to Abish, before the Transfer was made.

52. The Debtor was insolvent at the time the Transfer was made.

53. The Transfer enabled Abish to recover more than Abish would have received under Chapter 7 of the Bankruptcy Code if the Transfer had not been made and if Abish had received payment of such debt to the extent provided by the applicable provisions of the Bankruptcy Code.

54. By reason of the foregoing, to the extent that the Debtor or Abish assert and can prove that Abish was a creditor of the Debtor, the Transfer may be avoided as a preference under Bankruptcy Code § 547.

55. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made to Defendants during the year before the Debtor's bankruptcy filing. It is the Trustee's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property or transfer made by the Debtor for the benefit of Abish or any other transferee. The Trustee reserves his right to amend this Complaint to include (i) further information about the transfer, (ii) information regarding additional transfers, (iii) revision of the name of Abish, (iv)

9

additional causes of action including, but not limited to, Sections 542, 544, 545, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the filing of the original Complaint in this case.

### FOURTH CAUSE OF ACTION
(Bankruptcy Code § 548(a)(1)(A) – Fraudulent Transfer – Abish and GTI)

56. The Trustee repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint.

57. The Transfer constitutes a transfer of the Debtor's property within two years before the Petition Date.

58. The Loan Assignment constitutes a transfer of the Debtor's property within two years before the Petition Date.

59. The Transfer was made with actual intent to hinder, delay or defraud the Debtor's creditors.

60. The Loan Assignment was made with actual intent to hinder, delay or defraud the Debtor's creditors.

61. By reason of the foregoing, the Trustee entitled a judgment avoiding the Loan Assignment (as to GTI) and the Transfer (as to Abish) pursuant to Bankruptcy Code § 548(a)(1)(A). The Trustee is further entitled to a judgment recovering the Cash and the Miscellaneous Assets.

## FIFTH CAUSE OF ACTION
(Bankruptcy Code § 548(a)(1)(B) – Fraudulent Transfer – Abish and GTI)

62. The Trustee repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint.

63. The Transfer constitutes a transfer of the Debtor's property within two years before the Petition Date.

64. The Loan Assignment constitutes a transfer of the Debtor's property within two years before the Petition Date.

65. The Debtor received less than reasonably equivalent value in exchange for the Transfer.

66. The Debtor received less than reasonably equivalent value in exchange for the Loan Assignment.

67. The Debtor was insolvent on the date that the Transfer was made.

68. The Debtor was insolvent on the date that the Loan Assignment was made.

69. At the time the Transfer was made, the Debtor was: (a) engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or (b) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

70. At the time the Loan Assignment was made, the Debtor was: (a) engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or (b)

4916-1364-0736, v. 2

intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

71.　By reason of the foregoing, the Trustee is entitled to a judgment avoiding the Loan Assignment (as to GTI) and the Transfer (as to Abish) pursuant to Bankruptcy Code § 548(a)(1)(B). The Trustee is further entitled to a judgment recovering the Cash and the Miscellaneous Assets.

### SIXTH CAUSE OF ACTION
(Bankruptcy Code § 544 – Avoidance of Transfer Under Utah Code Ann. §§ 25-6-202, -203 and -303– Abish and GTI)

72.　The Trustee repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint.

73.　The Transfer constitutes a transfer of the Debtor's property within four years before the Petition Date.

74.　The Loan Assignment constitutes a transfer of the Debtor's property within four years before the Petition Date.

75.　The Debtor was insolvent when the Transfer was made or became insolvent as a result of the Transfer.

76.　The Debtor was insolvent when the Loan Assignment was made or became insolvent as a result of the Loan Assignment.

77.　At the time the Transfer was made, the Debtor was: (a) engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or (b) intended

12

to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

78. At the time the Loan Assignment was made, the Debtor was: (a) engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was unreasonably small capital; or (b) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

79. The Transfer was made with actual intent to hinder, delay or defraud the Debtor's creditors.

80. The Loan Assignment was made with actual intent to hinder, delay or defraud the Debtor's creditors.

81. To the extent the Debtor alleges and can prove that he owed a debt to Abish, and that the transfers described above were made to pay any such debt, the Debtor was insolvent at the time of the transfers, and Abish had reasonable cause to believe that the Debtor was insolvent.

82. By reason of the foregoing, the Trustee entitled a judgment (i) avoiding the Loan Assignment (as to GTI) and the Transfer (as to Abish) pursuant to Utah Code Ann. §§ 25-6-202, -203 and -303 as incorporated by Bankruptcy Code § 544, and (ii) enjoining any further disposition, transfer, or use of the Cash, the Miscellaneous Assets, or any other proceeds of the Transfer or the Bundy Home Sale Proceeds. The Trustee is further entitled to a judgment recovering the Cash and the Miscellaneous Assets.

## SEVENTH CAUSE OF ACTION
(Bankruptcy Code § 550 & 551– Transferee Liability and Preservation of Transfer)

83. The Trustee repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint.

84. Defendants GTI and/or Abish are the initial transferees of the Bundy Home Sale Proceeds.

85. Defendants GTI and/or Abish are the immediate or mediate transferee of such initial transferee or the person for whose benefit the transfers of the Bundy Home Sale Proceeds was made.

86. In the alternative, Defendants GTI and/or Abish are a subsequent transferees and did not take the transfers of the Bundy Home Sale Proceeds in good faith and without knowledge of the voidability of the Bundy Home Sale Proceeds.

87. By reason of the foregoing, and pursuant to Bankruptcy Code § 550, the Trustee may recover from Defendants GTI and/or Abish the Bundy Home Sale Proceeds and/or the Transfer or its value. The Trustee is further entitled to a judgment recovering the Cash and the Miscellaneous Assets.

88. By reason of the foregoing and pursuant to Bankruptcy Code § 551, the Transfer and the Bundy Home Sale Proceeds are preserved for the benefit of the Estate.

# EIGHTH CAUSE OF ACTION
(Disallowance of all Claims – Bankruptcy Code § 502(d) and (j))

89. The Trustee incorporates by reference all preceding paragraphs of this Complaint.

90. The Defendants received the avoidable transfers identified above.

91. The Defendants are the transferees from which property is recoverable under Bankruptcy Code § 550.

92. The Defendants have not paid the amount of the transfers, or turned over such property, for which the Defendants are liable under Bankruptcy Code § 550.

93. Pursuant to Bankruptcy Code § 502, any and all Claims of the Defendants against the Debtor's estate must be disallowed until such time as the Defendants pays to the Trustee an amount equal to the amount of the Transfer, plus interest thereon and costs.

94. Pursuant to Bankruptcy Code § 502(j), any and all Claims of the Defendants, and/or its assignees, against the Debtor's estate previously allowed by the Debtors, must be reconsidered and disallowed until such time as the Defendants pays to the Trustee an amount equal to the Transfer, plus interest thereon and costs.

4916-1364-0736, v. 2

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Trustee requests judgment against the Defendants as follows:

1. declaring that Ms. Bundy has no interest in the Cash, the Miscellaneous Assets, or any other proceeds of the Bundy Home Sale Proceeds;

2. for the turnover of the Cash, the Miscellaneous Assets, and any other proceeds of the Bundy Home Sale Proceeds, or their proceeds, to the extent they are within the possession, constructive possession, custody, or control of Defendants;

3. enjoining the Defendants from any further use, dissipation, or transfer of the Cash, the Miscellaneous Assets, or any other proceeds of the Bundy Home Sale Proceeds;

4. avoiding and recovering the Transfer or its value from Abish as a preferential transfer pursuant to Bankruptcy Code § 547;

5. in the alternative, avoiding and recovering the Transfer or its value from Abish and the Loan Assignment or its value from GTI as fraudulent transfers pursuant to Bankruptcy Code §§ 544 and 548 and Utah Code Ann. §§ 25-6-202, -203 and -303;

6. requiring Abish to immediately return the Transfer or its value to the Trustee pursuant to Bankruptcy Code § 550;

7. disallowing any Claims of the Defendants, and/or its assignees, if they refuse to turn over the Transfer or its proceeds to the Trustee pursuant to Bankruptcy Code § 502;

8. Awarding pre-judgment interest at the maximum legal rate pursuant to 28

U.S.C. § 1961 to the extent provided by law;

9. Awarding post-judgment interest at the maximum legal rate pursuant to 28 U.S.C. § 1961 from the date of judgment until paid in full; and

10. For any other relief the Court deems just and proper.

**DATED**: February 27, 2025   **COHNE KINGHORN, P.C.**


  /s/ George Hofmann
George Hofmann
Jeffrey Trousdale
Attorneys for the Trustee

17

4916-1364-0736, v. 2