```
 1                UNITED STATES BANKRUPTCY COURT

 2                       DISTRICT OF UTAH

 3   Case No. 24-23530                            Chapter 7
     _____
 4
          VIDEOTAPED RULE 2004 EXAMINATION OF LYDIA BUNDY
 5                  Thursday, January 2, 2025
     _____
 6

 7   In re AMMON EDWARD BUNDY

 8   _____

 9

10          PURSUANT TO NOTICE AND AGREEMENT, the

11   videotaped Rule 2004 Examination of LYDIA BUNDY, was

12   taken at the Hyatt Place, 1819 S. 120 East, St. George,

13   UT 84790, per stipulation of all parties, on behalf of

14   St. Luke's Health System, Ltd., et al., on Thursday,

15   January 2nd, 2025, at 8:46 a.m., before Traci Booth,

16   Registered Professional Reporter and Realtime Certified

17   Reporter within the States of Colorado and Utah.

18

19

20

21

22

23

24

25
```

1                P R O C E E D I N G S

2          (Deposition Exhibit No. 1 is premarked.)

3                VIDEOGRAPHER:  Good morning.  We are now on

4    the record on January 2nd, 2025, at 8:46 a.m. Mountain

5    Time, to begin the Rule 2004 Examination of Lydia

6    Bundy, Case No. 24-23530, in the United States

7    Bankruptcy Court, District of Utah.

8                We are located at 1819 South 120 East, St.

9    George, Utah 84790.

10               My name is Dawn Beck, Legal Video Specialist,

11   on behalf of Steno.

12               The court reporter is Traci Booth, also here

13   on behalf of Steno.

14               Will the counselor, please state your

15   appearance for the record and whom you represent.

16               MR. STIDHAM:  Eric Stidham on behalf of the

17   creditors -- the St. Luke's creditors and also Natasha

18   Erickson and Tracy Jungman.

19               VIDEOGRAPHER:  Thank you.

20               Would the court reporter please administer

21   the oath.

22                       LYDIA BUNDY,

23      having been first duly sworn, was examined and

24                    testified as follows:

25   ///

```
 1                       EXAMINATION
 2   BY MR. STIDHAM:
 3       Q    And, Ms. Bundy, as we mentioned before, my
 4   name is Eric Stidham.  I am here on behalf of some
 5   creditors as it relates to Mr. Ammon Bundy's
 6   bankruptcy.
 7            Do you understand that?
 8       A.   Yes.
 9       Q.   Okay.  And let me start off with first what
10   we have marked as Exhibit No. 1.
11            I'd ask you to take a look at that.
12            Have you seen Exhibit No. 1 before, a copy of
13   it?
14       A.   Just right now.
15       Q.   Well, did you receive a copy in the mail?
16            MR. BUNDY:  It's this.
17       A.   Uhm, yeah.  Yes.
18            MR. STIDHAM:  Okay.  And, Mr. Bundy, I
19   appreciate you're just assisting.  It'll just get
20   problematic if you prompt her with any answer, but
21   appreciate your effort there.
22       Q.   (BY MR. STIDHAM) So you have received a copy
23   of Exhibit No. 1 before; is that correct?
24       A.   Yes.
25       Q.   Okay.  And did you review Exhibit No. 1 when
```

LYDIA BUNDY
JANUARY 02, 2025
JOB NO. 1356070

```
 1   some designations there relating to the filing of that
 2   document in the Bankruptcy Court.
 3           But at the top it says, Document page 10 of
 4   14.  Is that what you're looking at?
 5       A.  Yes.
 6       Q.  And do you see below there, there's a list on
 7   that page, continuing on to the next page, of about 14
 8   different items -- 14 different categories, excuse me,
 9   of documents that were requested?
10       A.  Yes.
11       Q.  And did you read each of these 14 categories?
12       A.  Yes.
13       Q.  Okay.  Did you bring with you any documents?
14       A.  I do not have any of these documents.
15       Q.  Okay.  And that's the next question.
16           Do you have -- you say you do not have any of
17   the documents, correct?
18       A.  Yes.
19       Q.  Are there any business records, to your
20   knowledge, that are kept for the Bundy's Brazilian
21   Steakhouse?
22       A.  Can you say that again?
23       Q.  Sure.  There's a Brazilian -- there's a
24   Bundy's Brazilian Steakhouse, correct?
25       A.  Yes.
```

```
 1        Q.    Am I saying that correctly --
 2        A.    Yes.
 3        Q.    -- the name of the restaurant?
 4        A.    Uh-hmm.
 5        Q.    Are there any documents that relate to -- to
 6   your knowledge, are there any documents kept by the
 7   steakhouse?
 8        A.    No.
 9        Q.    So the steakhouse keeps no financial
10   documents regarding anything?
11        A.    Not with this person, no.
12        Q.    Well, did -- I'm -- let me step back.
13              Do you understand that you are listed as a
14   d/b/a for the Brazilian Steakhouse?
15        A.    Yes.
16        Q.    Do you understand -- can you tell me what
17   your understanding is of the significance of being
18   listed as a d/b/a for a business?
19        A.    I represent it.  I represent Bundy Brazilian
20   Steakhouse.
21        Q.    Well, isn't it a fact that you are Bundy's
22   Brazilian Steakhouse?
23        A.    I am the representative of it, yes.
24        Q.    Is there -- do you understand what a
25   corporate entity is?
```

```
 1              Like a corporation or an LLC, things like
 2   that, do you understand those?
 3        A.   Yes.
 4        Q.   And is Bundy's Brazilian Steakhouse run
 5   through a corporate entity?
 6        A.   Yes.
 7        Q.   What corporate entity is it run through?
 8        A.   Bundy's Industries.
 9        Q.   Bundy Industries.
10              And you're a manager of Bundy's Industries,
11   correct?
12        A.   Yes.
13        Q.   All right.  But is there anywhere -- to your
14   knowledge, is there any filing that's been made
15   regarding Bundy's Brazilian Steakhouse that indicates
16   that Bundy Industries is d/b/a Bundy's Brazilian
17   Steakhouse?
18        A.   Yes.
19        Q.   So you think there's a corporate filing
20   indicating that Bundy Industries is d/b/a Bundy's
21   Brazilian Steakhouse?
22        A.   Yes.  If I understand correctly, yes.
23        Q.   Okay.  Were you involved at all in putting
24   together the corporate documents relating to the
25   business, Bundy Industries or Bundy's Brazilian
```

```
 1  Steakhouse?
 2       A.   That was both me and my husband.
 3       Q.   Okay.  Is there -- well, let me just pause
 4  there for a second, and then we'll jump back in.
 5            I want to get back just to the document that
 6  is in front of you.
 7            So with regard to the document ...
 8            MR. STIDHAM:  Can we go off the record for
 9  just a second?
10            MR. BUNDY:  Yes, please.
11            Yes, we have records --
12            VIDEOGRAPHER:  Sorry.  We are going off the
13  record.
14   (Whereupon, a discussion was held off the record.).
15            VIDEOGRAPHER:  We are back on the record at
16  8:56 a.m.
17       Q.   (BY MR. STIDHAM) So, Ms. Bundy, picking up
18  kind of where we were at before the break, did you have
19  a chance to see whether or not you had access or
20  ability to access any of the documents that are listed
21  in the 14 categories on page 10 and 11 of Exhibit 1?
22       A.   Yes.
23       Q.   Okay.  And what efforts did you make to get
24  those documents?
25       A.   We searched.
```

```
 1        Q.   You searched your house?
 2        A.   We searched the business.  We searched it
 3   all, but we don't have the documents you need.
 4        Q.   Okay.  So when you say you searched the
 5   business, and you say we don't have the documents, what
 6   you need, can you explain what you mean to me -- what
 7   you mean by that?
 8        A.   We looked into it, I guess is the best way to
 9   put it.
10        Q.   Did you physically go look through records to
11   see whether or not there were records?
12        A.   (Witness nodding).
13        Q.   So where did you look, I guess, physically?
14             Are the corporate records held at a location
15   for the Bundy's Steakhouse?
16        A.   In a safe, yeah.
17        Q.   In a safe on -- at your residence?
18        A.   Yes.
19        Q.   Okay.  And then just, again, are there
20   documents relating to Bundy Industries kept in the same
21   location, in a safe on your residence?
22        A.   Yes.
23        Q.   Okay.  Are -- is there any other place where
24   Bundy Industry records are kept, other than the safe on
25   your residence?
```

LYDIA BUNDY
JANUARY 02, 2025
JOB NO. 1356070

```
 1        A.    No.
 2        Q.    Okay.  Are you also involved with the
 3   business, Bundy's -- Bundy's -- I forget -- the Bundy
 4   Motor -- the exhaust brake business?
 5        A.    No.
 6        Q.    Okay.  Can you tell me what the name of the
 7   exhaust brake business is?
 8        A.    Uhm, I think Sentimental or something like
 9   that.  Sentimental Brakes or something like that.
10        Q.    Okay.  All right.  So, day-to-day, what --
11   what activities are you involved in relating to Bundy
12   Industries or the Bundy's Steakhouse?
13        A.    Just Bundy's Steakhouse.
14        Q.    Okay.  And what do you do as it relates to
15   Bundy's Steakhouse?  What are your duties?
16        A.    I do the quarterly filing --
17        Q.    Okay.
18        A.    -- and take care of our catering trailer.
19        Q.    Okay.  When you say the "quarterly filing,"
20   what are you referring to?
21        A.    For taxes.
22        Q.    Okay.  So the quarterly tax payments?
23        A.    Uh-hmm.
24        Q.    With both State and Federal?
25        A.    Yes.
```

```
 1      Q.   And then you said you were involved, if I
 2   understood correctly, with the catering business?
 3      A.   Uh-hmm.
 4      Q.   What is your involvement with the catering
 5   business?
 6      A.   I call the people and get their food to them
 7   and take the trailer to them, and, uhm, manage the
 8   employees on site --
 9      Q.   Okay.
10      A.   -- at the caterings, yeah.
11      Q.   Okay.  With the operations at the Bundy
12   Steakhouse location, are you involved with those --
13      A.   No, not as much.
14      Q.   -- other than the catering?
15      A.   Not as much.
16      Q.   Do you have a title, a job title, as it
17   relates to the Bundy Steakhouse business?
18      A.   Catering manager.
19      Q.   Catering manager.
20           Do you have a title as it relates to Bundy
21   Industries?
22      A.   Just partner.
23      Q.   Okay.  And do you have some ownership
24   interest in Bundy Industries?
25      A.   Just half and half with my husband.  That's
```

LYDIA BUNDY  
JANUARY 02, 2025  
JOB NO. 1356070

1  about it.
2     Q.   Okay.  And what does Bundy Industries do?
3     A.   We -- it's just the parent company for
4  Bundy's Brazilian Steakhouse.
5     Q.   Okay.  Does Bundy Industries engage in any
6  business other than Bundy's Brazilian Steakhouse?
7     A.   No.
8     Q.   Are you involved in any other family
9  businesses, other than what you've already described to
10 me related to the catering business and having some
11 ownership in Bundy Industries?
12    A.   No, sir.
13    Q.   Okay.  So we've already -- I've already asked
14 you a number of questions, but let me just back up and
15 talk about some of kind of the rules of deposition.
16         Have you ever had your deposition done --
17 taken before today?
18    A.   No.
19    Q.   Okay.  Well, you're doing a good job, but
20 just a couple of rules to keep in mind.  If I ask you a
21 question, and for any reason you don't understand it,
22 please ask me to rephrase it; is that fair?
23    A.   Yes.
24    Q.   If I ask you a question, and you respond,
25 I'll assume that you understood the question; is that

```
 1   fair?
 2       A.   Yes.
 3       Q.   Okay.  And as we discussed, I understand that
 4   there might be a need for you to take a break for some
 5   reason.
 6       A.   Yes.
 7       Q.   And if you do, just tell me, and we'll take a
 8   break, and get done what you need to get done.
 9       A.   Okay.
10       Q.   Okay.
11       A.   I want to take a break (whispering).
12       Q.   So with regard to -- can I ask you what your
13   educational background is, just at a high level?
14       A.   Uhm, went to tech school.
15       Q.   Okay.  So you graduated from high school, I
16   assume.
17       A.   Uh-hmm.
18       Q.   When did you graduate from high school?
19            2021, I think.
20       A.   '19.
21       Q.   2019.
22            And where did you graduate from?
23       A.   Hurricane High.
24       Q.   Okay.  And did you have any formal education
25   after high school?
```

LYDIA BUNDY  JOB NO. 1356070
JANUARY 02, 2025

```
 1       A.    Just tech school.
 2       Q.    Okay.  And what tech school did you attend?
 3       A.    Dixie.
 4       Q.    Dixie.  And did you graduate from Dixie?
 5       A.    Yes.
 6       Q.    And what was your degree from Dixie?
 7       A.    Diesel mechanics.
 8       Q.    Okay.
 9             THE DEPONENT:  I might need a break.
10             MR. STIDHAM:  Okay.  Let's take a break.
11       Let's go off the record.
12             VIDEOGRAPHER:  We are going off the record at
13  9:02 a.m.
14         (Recess taken from 9:02 a.m. to 9:12 a.m.)
15             VIDEOGRAPHER:  We are back on the record at
16  9:12 a.m.
17       Q.    (BY MR. STIDHAM) So, Ms. Bundy, kind of going
18  back to kind of the -- your educational background,
19  your business background, let me just ask you a couple
20  of questions so I can understand your business
21  experience, if I could.
22       A.    I would like to plead the Fifth and get an
23  attorney so we can better answer your questions.
24       Q.    Is that for all the questions that remain?
25       A.    That's -- yeah.
```

1       Yeah.
2       Q.   Okay.  And this is -- I want to respect the
3  Fifth Amendment.  Part of what I have to do is ask you
4  some questions so that you actually plead the Fifth.
5       It's problematic if you make a blanket
6  statement.  My plan would be -- just to be up front
7  with you, I'm going to ask you some questions, and if
8  you plead the Fifth, I'm not going to ask you every --
9  I'm going to try and kind of be reasonable about it.
10 I'm not going to ask you every potential question, but
11 I want to ask you about a couple of categories, and
12 then if you plead the Fifth, I will respect that, and
13 we'll deal with that later; is that fair?
14      A.   Yes.
15      Q.   Okay.  So, Ms. Bundy, would you plead -- is
16 it your -- are you pleading the Fifth Amendment
17 regarding any questions regarding the finances and
18 operation of the business, Bundy Brazilian Steakhouse?
19      A.   Uhm, yes.
20           No.
21      Q.   Which is it, ma'am?
22           THE DEPONENT:  Help me a little bit.
23           MR. BUNDY:  Just like an attorney.
24      A.   I'd just like an attorney.
25           MR. BUNDY:  So we can figure out, you know --

1    A.   I want to get you the right answers and solid
2  answers.
3    Q.   (BY MR. STIDHAM) Fair enough.
4         MR. BUNDY:  We want to do this right.
5         MR. STIDHAM:  I'm sorry, Mr. Bundy.
6         MR. BUNDY:  I'm sorry.
7    Q.   (BY MR. STIDHAM) But, ma'am, I just need to
8  establish on the record that you're pleading the Fifth
9  Amendment.
10   A.   Yes.
11   Q.   Okay.  So let me ask that again and give you
12  a chance to respond.
13        And my plan would be -- I'm going to ask you
14  a couple more categories, and then maybe have a little
15  bit more dialogue with you, just to make sure.
16        What I don't want to have happen, ma'am, is
17  that I misunderstand something that you're willing to
18  testify about to today, okay, and that I create some
19  kind of gap what you're pleading the Fifth Amendment on
20  what areas I might want to inquire into.
21        Do you understand that?
22   A.   Yes.
23   Q.   Okay.  So, again, with regard to -- are you
24  saying that you're pleading the Fifth Amendment with
25  regard to any questions that relate to the business and

```
 1   finances of the Bundy Brazilian Steakhouse?
 2        A.   Yes.
 3        Q.   Are you pleading the Fifth Amendment with
 4   regard to any questions that relate to business
 5   dealings with Mr. Ammon Bundy?
 6        A.   Yes.
 7        Q.   Okay.  Are you intending to plead the Fifth
 8   Amendment regarding the finances and business of Bundy
 9   Industries?
10        A.   Yes.
11        Q.   Are you intending to plead the Fifth
12   Amendment regarding any agreements with Mr. Bundy
13   relating to loans of any kind?
14        A.   Yes.
15        Q.   Okay.  Are you intending to plead the Fifth
16   Amendment with regard to your knowledge relating to
17   financial transactions between your husband and
18   Mr. Ammon Bundy?
19        A.   Yes.
20        Q.   Are you intending to -- are you pleading the
21   Fifth Amendment with regard to any and all financial
22   transactions between yourself and Mr. Ammon Bundy?
23        A.   Yes.
24        Q.   Are you intending to plead the Fifth
25   Amendment regarding any financial transactions,
```

```
 1   including loans or salary, that is being paid to
 2   Mr. Bundy through one of the businesses that your
 3   husband is involved in?
 4        A.   Yes.
 5        Q.   Through any of the businesses, excuse me?
 6        A.   Yes.
 7        Q.   You just need to speak up, ma'am.  You're a
 8   little quiet.
 9        A.   Yes.
10        Q.   Okay, thank you.
11             So is it -- in effect, and I don't want to
12   waste our time.  As I told you before, I don't want to
13   be overly technical and ask you every single Fifth
14   Amendment -- every single question I might potentially
15   ask and have you pled the Fifth Amendment, but is it
16   fair to say that your intention is to plead the Fifth
17   Amendment regarding any question I might be asking here
18   today in this deposition going forward?
19        A.   Yes.
20        Q.   Okay.  All right.  With that in mind -- well,
21   any other questions, ma'am, before we go off the
22   record?
23        A.   No.
24        Q.   Okay.  I will reach out to you and your
25   husband.
```

1           I will send in -- we can go off the record,
2  but, if it's okay, I would like to exchange emails and
3  be fine with you -- if it's fine with you, Mr. Bundy
4  just so we can coordinate things going forward.
5           Is that understood?
6      A.   Yes.
7      Q.   All right.  Again, just once for the record,
8  and I apologize for doing this, I just need to try and
9  create a relatively clear transcript on these issues.
10          Are there any questions at all regarding any
11 categories relating to Mr. Ammon Bundy that you would
12 be willing to testify to today without pleading the
13 Fifth Amendment?
14     A.   No.
15          MR. STIDHAM:  Okay.  All right.  With that I
16 think we can go off the record.
17          VIDEOGRAPHER:  This concludes the examination
18 of Lydia Bundy on January 2nd, 2025.
19          We are going off the video record, and the
20 time is 9:17 a.m. Mountain Time.
21 (Whereupon, the within proceedings were adjourned at
22               9:17 a.m. on January 2, 2025.)
23                        * * *
24
25

```
 1                    REPORTER'S CERTIFICATE

 2    STATE OF UTAH          )
                             )    ss
 3    COUNTY OF WASHINGTON   )

 4
              That prior to being examined, the witness
 5    was, by me, duly sworn to testify to the truth, the
      whole truth, and nothing but the truth.
 6
              That I thereafter transcribed my said
 7    shorthand notes into typewriting, and that the
      typewritten transcript of said deposition is a
 8    complete, true, and accurate transcription of my said
      shorthand notes taken at said time.
 9
              I further certify that I am not a relative or
10    employee of an attorney or counsel of any of the
      parties, nor a relative or employee of any attorney or
11    counsel involved in said action, nor a person
      financially interested in the action.
12
              IN WITNESS WHEREOF, I have hereunto set my
13    hand in my office in the County of Washington, State of
      Utah, this 2nd day of January, 2025.
14

15
                          _____
16                              Traci L. Booth, RPR, CRCR

17

18

19

20

21

22

23

24

25
```