George Hofmann (10005)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Mark C. Rose,
Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re | Bankruptcy No. 24-23530 (WTT) |
|---|---|
| AMMON EDWARD BUNDY, | Chapter 7 |
| Debtor. | |

## MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE, THE DEBTOR, AND MRS. BUNDY

Mark C. Rose, in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Ammon Edward Bundy (the "Debtor"), moves this Court pursuant to Fed. R. Bankr. P. 9019 for an order approving the compromise and settlement between and among the Trustee, on the one hand, and the Debtor and the Debtor's spouse, on the other. The Trustee, the Debtor, and the Debtor's spouse are hereafter referred to as the "Parties". In support of this Motion, the Trustee represents to the Court as follows:

## GENERAL BACKGROUND

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On July 17, 2024, the Debtor filed bankruptcy under Chapter 7 of the Bankruptcy Code resulting in bankruptcy case 24-23530 (the "Case"), which created a bankruptcy estate pursuant to Bankruptcy Code § 541 (the "Estate").  Mark C. Rose was appointed as the Chapter 7 Trustee for the Estate.

3. The Debtor has in his possession $200,000 in cash (the "Cash"), which the Trustee contends is property of the Estate.  The Trustee understands that the Cash is the proceeds of a residence which the Debtor and his spouse formerly owned.  The Debtor disputes that he has any right personally to the Cash.

4. The Debtor's Estate includes the following additional assets in addition to the Cash (the "Other Assets"):

    A. 2019 Ford Expedition

    B. 2020 Ford F250

    C. 2007 Chevy Silverado

    D. 2010 Polaris Sportsman 550

    E. 2020 Polaris Sportsman 550

    F. 2006 Gear Box Trailer

    G. Mechanic's Tools and Cases

    H. Mammoth Creek Property

    I. Appliance, Furniture, Safe, Electronics

    J. Exercise Equipment, Guns and Clothing

5. The Parties engaged in settlement negotiations concerning the Cash and

the Other Assets, and issues related thereto, and the Parties agreed to a compromise and settlement to resolve their differences with finality concerning their dispute.

## **THE SETTLEMENT AGREEMENT**

6. Attached as Exhibit A to this Motion is a copy of the Settlement Agreement between the Parties (the "Agreement"). The Agreement is summarized in this Motion, but to the extent there are any inconsistencies between this summary and the Agreement, the Agreement itself controls. Accordingly, creditors and parties-in-interest are directed to the Agreement itself for its complete terms.

7. Under the Agreement, the Debtor has agreed to pay the Trustee $120,000 within seven business days after approval of the Agreement. The Debtor has waived any claim of exemption as to the settlement proceeds, and both the Debtor and the Debtor's spouse have waived any claim to these proceeds and have consented to its irrevocable payment to the Trustee.

8. Effective on payment of the settlement amount, the Trustee has agreed to waive any claims to recover the Cash or the Other Assets. For the avoidance of doubt, the Trustee, the Debtor, and his spouse have other potential claims and controversies between them, and the settlement is intended to resolve only the parties' disputes with respect to the Cash and the Other Assets, and in particular the Trustee's potential claims to recover them.

4921-4907-0390, v. 1

**DISCUSSION**

9. In considering a proposed compromise and settlement, this Court applies the factors enunciated in In re Kopexa Realty Venture Co., 213 B.R. 1020 (B.A.P. 10th Cir. 1997). These factors are: (1) the probable success of the underlying litigation on the merits; (2) the possible difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views. Id. at 1022. The Trustee submits that these factors support approval of the Agreement.

10. With regard to the merits, the Trustee believes and submits that he has very strong claims to recover the Cash and the Other Assets. He contends that these assets are property of the Estate under Section 541 of the Bankruptcy Code and subject to turnover under Section 542 of the Bankruptcy Code.

11. Although the Debtor does not presently claim any exemptions in the Other Assets, he could amend his schedules at any time in the future and claim exemptions in certain of the Other Assets. It is the Trustee's position [see Docket No. 20] that if the Debtor is entitled to claim exemptions in any of the Other Assets, then Idaho law should govern the applicable exemptions. The Trustee also believes it is appropriate that even though the Debtor has not presently claimed any exemptions, that the Debtor should nevertheless be afforded the benefit of reasonable exemptions. In this particular case, the Other Assets to which an exemption could apply under Idaho state law in the Trustee's view are (1) one motor vehicle to the extent of $10,000 (Idaho Code § 11-605(3)); (2) a $1,500 wild card exemption (Idaho Code § 11-605(10)) ; and (3) tools of

4

the trade to the extent of $10,000 (Idaho Code § 11-605(3)).  The Trustee has taken into account these exemption amounts in his analysis of the proposed settlement.

12. In addition, the Trustee must take into account the costs of liquidating the Other Assets, which would typically entail a 15% commission paid to the Trustee's auctioneer.

13. The Trustee also must take into account the risk that Mrs. Bundy could claim ownership to 100% or 50% of the Cash and the Other Assets.

14. Finally, the Trustee must take into account the risk that the Cash could belong to Abish-Husbondi, Inc. ("Abish").  Moreover, it is inherently difficult to litigate the source and ownership of cash which is difficult to impossible to trace.  Although it could be claimed that the Cash belongs to Abish, it is the Trustee's position that the Cash belongs to the Debtor because it is in his possession, the Trustee has been advised that Abish is a dissolved entity, and most importantly the Cash is the proceeds of the sale of the Debtor's former residential real estate in Arizona.

15. The first factor weighs in favor of compromise and settlement.  The Trustee believes he would likely succeed in the arguments and disputes outlined above, but as in any litigation, there is certainly a risk the Trustee would not prevail on some or all of his claims.

16. The second Kopexa factor weighs heavily in support of approval of the Settlement.  Although the Trustee's recovery and liquidation of the Other Assets presents little to no collection risk, the opposite is true with respect to the Cash.  Cash is of course highly fungible, transferrable, and susceptible to dissipation and removal.  If

5

the Trustee were to litigate with the Debtor rather than settle, there is a substantial risk that some or all of the Cash may disappear. At a minimum, the Trustee would expect the Debtor to use some or all of the Cash to retain an attorney to dispute the Trustee's claims, which would impair the Trustee's ability to recover all of the Cash.

17. The third Kopexa factor, the complexity and expense of the litigation, also weighs in favor of the proposed settlement. Concerning the Other Assets, the issues are not complicated, but nevertheless the Trustee could be required to forcibly seize the Other Assets, which can be a difficult and expensive process. Furthermore, Mrs. Bundy may claim to own some or all of the Other Assets, and ownership determinations concerning non-titled personal property assets can be complicated.

18. As to the Cash, although it is the Trustee's position that the Cash belongs to the Debtor, the litigation of the ownership of the Cash could be complicated, especially because (a) Abish could claim to own the Cash, (b) Mrs. Bundy could claim to own some or all of the Cash, and (c) as described above Cash is inherently difficult to trace. Furthermore, if the Trustee were to litigate disputes with the Debtor, he could be required to seek to forcibly seize the Cash from the Debtor, which could be a difficult and expensive process.

19. Concerning the fourth Kopexa factor, the interests of creditors in deference to their reasonable views, it is entirely possible that the only creditors in this case, the "St. Luke's" creditors, may oppose the settlement. While the St. Luke's creditors have seemingly endless resources to fund litigation, in contrast the Trustee currently has no resources.

6

20. The Trustee presently has no money on hand, and this estate is administratively insolvent. Courts in evaluating bankruptcy settlements frequently take into account whether the estate is administratively insolvent. See, e.g., Geltzer v. Kollel Mateh Efraim, LLC (In re Kollel Mateh Efraim, LLC), 2013 Bankr. LEXIS 2004, 13 (Bankr. S.D.N.Y. May 15, 2013) (considering administrative insolvency and litigation costs, estimated to exceed $100,000, in approving a settlement); In re The Heritage Organization, L.L.C., 375 B.R. 230, 280 (Bankr. N.D. Tex. 2007); In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998).

21. In the Trustee's view the proposed settlement is not a perfect solution to the disputes resolved, but settlements are almost never perfect—they are inherently a compromise. If the Trustee were to rely entirely on litigation methods to resolve the dispute, it is entirely possible the Cash would be dissipated or disappear in the meantime. In this scenario the Trustee would have an even more administratively insolvent estate, and potentially no money to show for it.

22. Finally, there are other reasons beyond the traditional Kopexa factors why the Court should approve the settlement. Under Bankruptcy Code § 704(a)(1), it is the Trustee's duty to "close such estate as expeditiously as is compatible with the best interests of parties in interest." The Trustee hopes and believes that approval of the settlement will result in a rapid administration of this estate, and would certainly be more expeditious than the litigation alternatives.

23. It is the "inveterate policy of the law" "to encourage, promote, and sustain the settlement and compromise of disputed claims." Collecting Supplies LLC v. City of

Mankato (In re Collecting Supplies LLC), 2013 Bankr. LEXIS 917, 13-14 (B.A.P. 10th Cir. Mar. 11, 2013). Certainly the settlement, which resolves numerous potential contested matters that would otherwise require litigation, advance this policy.

**WHEREFORE**, the Trustee respectfully requests that the Agreement be approved, that this Court enter an Order approving the Agreement, and for such other and further relief as may be just and proper.

DATED:  April 18, 2025

**COHNE KINGHORN, P.C.**

/s/ George Hofmann
GEORGE HOFMANN

Attorneys for the Trustee

8

# EXHIBIT "A"

4921-4907-0390, v. 1

## SETTLEMENT AGREEMENT

**This Settlement Agreement** ("Agreement") is entered into between Mark C. Rose (the "Trustee"), the duly appointed and qualified Chapter 7 Trustee of the bankruptcy estate of Ammon Edward Bundy (the "Debtor"), and Lisa Bundy ("Mrs. Bundy").

**R E C I T A L S:**

**Whereas**, on July 17, 2024, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court");

**Whereas**, subsequently, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate");

**Whereas**, based upon the Trustee's investigation, including the testimony of the Debtor at an examination conducted under Fed. R. Bankr. P. 2004 on February 25, 2025, the Trustee believes that he has potential claims to recover what he contends is property of the Estate under Bankruptcy Code §§ 541 and 542 as follows (the "Assets"):

- $200,000 cash in the Debtor's possession (the "Cash"), which the Trustee contends is the proceeds of the sale of the sale of the former residence of the Debtor and Mrs. Bundy in Arizona
- 2019 Ford Expedition
- 2020 Ford F250
- 2007 Chevy Silverado
- 2010 Polaris Sportsman 550
- 2020 Polaris Sportsman 550
- 2006 Gear Box Trailer
- Mechanic's Tools and Cases

- Mammoth Creek Property
- Appliance, Furniture, Safe, Electronics
- Exercise Equipment, Guns and Clothing

As listed on the A & B Bankruptcy Schedules.

**Whereas**, the Debtor, and Mrs. Bundy do not admit the facts stated above which the Trustee contends gives rise to his ability to recover the Cash, and they would assert defenses to the Trustee's recovery of the Cash were the matter litigated, and the Debtor disputes that he has any right personally to the Cash;

**Whereas**, on February 27, 2025, the Trustee commenced Adversary Proceeding No. 20-2019 (the "Adversary Proceeding") to recover the Cash;

**Whereas**, on February 28, 2025, the Court in the Adversary Proceeding granted the Trustee's emergency motions and issued prejudgment writs of attachment and assistance (the "Writs") to enable the Trustee to immediately secure the Cash;

**Whereas**, the Trustee did not immediately serve the Writs based on the Trustee's interpretation that the Debtor's would not expend or transfer the Cash pending settlement negotiations;

**Whereas**, in order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the dispute between the parties to this Agreement, the Trustee and the Debtor, and Mrs. Bundy have agreed to a compromise and settlement to resolve their differences with finality concerning the matters described above.

### Settlement Agreement

**Now, Therefore,** based upon the foregoing facts and recitals, the Trustee and the Debtor and Mrs. Bundy stipulate and agree as follows:

1. The Debtor has agreed to pay to the Trustee the sum of $120,000 (the "Settlement Amount") within seven business days after the court approves this Agreement. The Debtor waives any claims of exemption as to the Settlement Amount. Mrs. Bundy and the Debtor waive any claims to the Settlement Amount and consent to its irrevocable payment to the Trustee.

2. Should Debtor fail to pay any the Settlement Amount when due, the Trustee, in his sole discretion, may declare this Agreement and all of its terms to be null and void (without any written notice). If this Agreement is so declared and rendered void, the parties shall retain all of their respective rights and claims, and nothing contained herein shall be deemed a waiver of any and all rights and remedies of the parties nor an acknowledgment by either party as to their respective rights and claims as provided for herein or otherwise.

3. Effective upon payment in full of the Settlement Amount the Trustee (the "Effective Date"), on behalf of the Estate, and any predecessor or successor, or any other entity or person claiming by, through or under any of them hereby releases and forever discharges the Debtor and Mrs. Bundy, of and from any claim or cause of action to recover the Assets (other than the Settlement Amount) for the Estate. Upon the Effective Date the Trustee releases title, possession, custody, and control of the Assets (other than the Settlement Amount) to a person or entity of the Debtor's selection. Upon the Effective Date the Trustee waives the right to commence, institute or prosecute any lawsuit, action, or other proceeding against the Debtor to recover any of the Assets (other than the Settlement Amount). For the avoidance of doubt, the Trustee, the Debtor and Mrs. Bundy have other potential claims and controversies between them, and this Agreement is intended to resolve only the parties' disputes with respect to the Assets and in particular the Trustee's claims to recover the Cash and the other Assets.

3

4927-2312-4274, v. 4

4. The Trustee, the Debtor, and Mrs. Bundy agree that neither the acceptance of, nor the performance of any obligations under this Agreement shall constitute or be construed as an admission of liability by either the Trustee or the Debtor, or Mrs. Bundy.

5. This Agreement is subject to notice to creditors in the Debtor's bankruptcy case and approval of the Court. The Trustee agrees to seek such approval in a timely manner. In the event the Court does not approve this Agreement, this Agreement and all of its terms will be null and void (without any written notice).

**Knowledge and Understanding of Terms**

All parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement. All parties to this Agreement warrant and represent to each other that they have, either personally or through their attorneys, fully investigated to their full satisfaction all of the facts surrounding the various claims, controversies and disputes between them and they are fully satisfied with the terms, conditions and effects of this Agreement. All parties warrant and represent, each to the other, that no promises or inducements have been offered or made except as herein set forth, and this Agreement is executed without reliance on any statement or representation made by any of the parties or their agents, except as herein set forth.

**Entire Agreement**

This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

4

### Governing Law

This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the internal laws of the State of Utah.

### Retention of Jurisdiction

The Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

### Modifications and Amendments

The terms and provisions of this Agreement may be modified or amended only by a written agreement executed by all Parties.

### Waivers and Consents

The terms and provisions of this Agreement may be waived, or consent for the departure therefrom granted, only by a written document executed by the party entitled to the benefits of such terms or provisions.  No such waiver or consent shall be deemed to be or shall constitute a waiver or consent with respect to any other terms or provisions of this Agreement.  Each such waiver or consent shall be effective only in the specific instance and for the purpose for which it was given, and shall not constitute a continuing waiver or consent.

### Benefit

All statements, representations, warranties, covenants and agreements in this Agreement shall be binding on the Parties and shall inure to the benefit of the respective successors and permitted assigns of each party hereto.  Nothing in this Agreement shall be construed to create any rights or obligations except among the Parties, and no person or entity shall be regarded as a third-party beneficiary of this Agreement.

4927-2312-4274, v. 4

**No Waiver of Rights, Powers, and Remedies**

No failure or delay by a party hereto in exercising any right, power or remedy under this Agreement, and no course of dealing between the Parties hereto, shall operate as a waiver of any such right, power or remedy of the party.  No single or partial exercise of any right, power or remedy under this Agreement by a party hereto, nor any abandonment or discontinuance of actions to enforce any such right, power or remedy, shall preclude such party from any other or further exercise thereof or the exercise of any other right, power or remedy hereunder.  The election of any remedy by a party hereto shall not constitute a waiver of the right of such party to pursue other available remedies.  No notice to or demand on a party not expressly required under this Agreement shall entitle the party receiving such notice or demand to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of the party giving such notice or demand to any other or further action in any circumstances without such notice or demand.

**Counterparts**

This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

## Execution Documents

All parties agree to execute any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this Agreement.

Dated this 15TH day of April, 2025

**AMMON EDWARD BUNDY**

_____

**LISA BUNDY**

_____

**MARK C. ROSE**

*[signature]*

_____
MARK C. ROSE, NOT INDIVIDUALLY BUT SOLELY IN HIS CAPACITY AS Chapter 7 Trustee of the Debtor's Estate

7

4927-2312-4274, v. 4

without such notice or demand.

This Agreement may be executed in counterparts and counterparts containing the signatures of all parties shall represent one and the same agreement.

### Execution Documents

All parties agree to execute any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this Agreement.

Dated this 15th day of April, 2025

AMMON EDWARD BUNDY

_____

LISA BUNDY

_____

MARK C. ROSE

_____
MARK C. ROSE, NOT INDIVIDUALLY BUT SOLELY IN HIS
CAPACITY AS Chapter 7 Trustee of the Debtor's Estate