Erik F. Stidham (Idaho State Bar #5483) (Admitted pro hac vice)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: (208) 342-5000
efstidham@hollandhart.com

Darren G. Reid (11163)
Engels Tejeda (11427)
Benjamin D. Passey (19234)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
dgreid@hollandhart.com
ejtejeda@hollandhart.com
bdpassey@hollandhart.com

*Attorneys for St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re:<br><br>AMMON EDWARD BUNDY<br><br>Debtor. | Bankruptcy No. 24-23530<br><br>Chapter 7<br><br>Honorable William T. Thurman |
|---|---|

**ST. LUKE'S CREDITORS' COMBINED REPLY IN SUPPORT OF SECOND MOTION TO COMPEL AMMON BUNDY'S COMPLIANCE WITH CONTINUED RULE 2004 SUBPOENA AND FOR SANCTIONS AND MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION TO QUASH SUBPOENA**

St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP (together "St. Luke's Creditors"), submit this Combined Reply in support of the St. Luke's Creditors' Second Motion to Compel Ammon Bundy's Compliance with Rule 2004 Subpoena and for Sanctions ("Second Motion to Compel")

[Dkt. 424] and Memorandum in Opposition to the Debtor's Motion to Quash Subpoena (the "Motion to Quash") [Dkt. 434].

## INTRODUCTION

Debtor Ammon Bundy (the "Debtor") continues his pattern of obstruction and evasion, refusing to answer over 40 questions during his Rule 2004 examination and failing to produce responsive documents while offering nothing more than weak excuses about storage trailers and "inaccessible" accounts for his failures to comply. His Motion to Quash should be denied, and he should be compelled to comply with his discovery obligations.

## BACKGROUND

1. St. Luke's Creditors seek by their Second Motion to Compel dated June 3, 2025, for this Court to order the Debtor to fully comply with his discovery obligations under Rule 2004 by producing responsive documents and sitting for a continued Rule 2004 examination to permit, at minimum, for St. Luke's Creditors to obtain answers to the 40 plus questions he refused to answer.

2. In response to the Second Motion to Compel, on June 9, 2025, the Debtor filed a "Response in Opposition to St. Luke's Creditors' Second Motion to Compel" (the "Response") (Dkt. 437), and the Motion to Quash. The Debtor's Motion to Quash and for Protective Order is accompanied by a Memorandum of Points and Authorities (Dkt. 438), and his Declaration in Support (Dkt. 435).

3. The facts pertaining to the Second Motion to Compel and Motion to Quash are identical. As such, this pleading provides both a reply to Debtor's Response and a response to

Debtor's Motion to Quash. For the reasons stated below, this Court should deny Debtor's Motion to Quash and grant St. Luke's Second Motion to Compel.

### GOVERNING STANDARD

4. The same standard governs the Motion to Compel and the Motion to Quash.

5. The Court has authority to compel a debtor's compliance with the Rule 2004 Subpoena pursuant to Bankruptcy Rule 2004 and Bankruptcy Rule 9016, which incorporates Federal Rule of Civil Procedure 45. *See* 9 Collier on Bankruptcy ¶ 2004.02 (16th 2024) ("In addition to Rule 45 of the Federal Rules of Civil Procedure, the debtor may also be compelled to comply with the terms of a Rule 2004 examination under Rule 2004(d)").

6. Under Bankruptcy Rule 2004(d), the Court has discretion to tailor discovery to the needs of the case, including imposing the terms and conditions for an examination. Rule 2004(d) provides that the court "may for cause and on terms it may impose, order the debtor to be examined under this rule 2004 at any designated time and place, in or outside the district." Fed. R. Bankr. P. 2004(d). "If the target of Rule 2004 discovery believes the request is unduly burdensome, it has the burden of showing that the burden is in fact undue." *In re Roman Catholic Church of the Diocese of Gallup ("Gallup")*, 513 B.R. 761, 767 (Bankr. D.N.M. 2014)

///

**ARGUMENT**

**A.     The Debtor has not complied with discovery obligations.**

7.     Despite the Debtor's assertions to the contrary, he did not answer all questions during his Rule 2004 Examination in "good faith." *See* Response at 2. Notably, the Debtor admits he "repeatedly objected during the examination" when asked questions about entities he controlled or controls. *Id.* at 2-3. There is no undue burden caused by a continued examination.[1]

8.     The Debtor has also admitted he has additional documents. He is required to produce them absent a showing of undue burden. But in his Opposition, he does not show undue burden. Instead, he asserts he has provided all documents "reasonably available to him." Response at 2. The Debtor gives three reasons for not producing documents. First, the Debtor argues that some of the documents are in a storage trailer and it would take "days" to unload. Response at 2-3. That is insufficient, particularly where, as here, the documents are highly probative of his assets and liabilities. Second, the Debtor argues that the documents are otherwise "inaccessible," claiming as an example that "Capital One account is closed and [he] has no physical or digital access to past statements. *Id*. at 2. Yet, the Debtor does not indicate what efforts he made, if any, to locate the documents, including, for example, calling Capital One and asking for copies of their past statements to comply with the Subpoena, or at least identifying the corresponding account number(s) so that the St. Luke's Creditors could seek the same. Third, the Debtor claims that the

---

[1] The Court authorized discovery related to the proposed Settlement Agreement. *See* Order Setting Dates and Deadlines for Evidentiary Hearing dated June 5, 2025 (Dkt. 429). To increase efficiency, St. Luke's Creditors propose that a continued Rule 2004 examination can be conducted in succession with its noticed deposition of the Debtor as to topics relevant to the proposed Settlement Agreement.

4

documents are "no longer in his possession." Response at 3. The Debtor provides no information about where the documents are now, or how he lost them. Again, he fails to meet the standard to show that, for whatever documents those are, it's unduly burdensome for him to ask for copies or retrieve them. In short, none of these arguments meet the Debtor's burden.

**B.    The discovery that the St. Luke's Creditors seek is within the scope of Rule 2004 and the documents requested are not duplicative.**

9.    The discovery sought by St. Luke's Creditors is within the scope of Rule 2004 and is not duplicative of any discovery obtained either through the Debtor's truncated examination, or through the documents he produced to the Trustee in December 2024.

10.    Instead of simply directing the Debtor to the request for production of documents that is Exhibit A to the Amended Subpoena, the St. Luke's Creditors took the extra steps of (1) reviewing the document production that the Debtor made to the Trustee in December 2025; and (2) identifying for the Debtor the categories of documents in the subpoena that were not included in his December 2025 production. The Debtor has been in possession of that list since February 23, 2025, when counsel for St. Luke's Creditors emailed it to him in advance of his Rule 2004 examination. *See* Declaration of Erik F. Stidham in Support of Second Motion to Compel ("Stidham Decl..," ¶ 5, Ex. B) (Dkt. 425).

11.    During his examination, it became clear that the Debtor does have documents responsive to the St. Luke's Creditors' requests. *Id.*, ¶ 6, Ex. C; ¶ 9, Ex. E. The Debtor should be compelled to produce those documents and all other responsive documents because the purpose of the discovery is highly probative of the estate's assets. *In re Kearney*, 590 B.R. 913, 920 (Bankr.

5

D.N.M. 2018) ("The primary purpose of an examination under Rule 2004 is to ascertain the extent and location of the estate's assets.").

    **C.    Discovery about Debtor Bundy's corporate entities and his actions related to the entities is authorized by Rule 2004.**

12.    Contrary to the Debtor's arguments, the St. Luke's Creditors are under no obligation to "demonstrate" that the Debtor's entities are alter-egos to obtain discovery about them in this Chapter 7 case. *See* Response at 4. Instead, "[t]he scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed." *In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 378 (Bankr. N.D. Ill. 1996) (cited approvingly in *Kearney*, 590 B.R. at 921). Under this standard, the Debtor cannot credibly argue that an examination into his entities is not related to his affairs, nor that his actions related to such entities would not potentially affect the administration of his estate. *See e.g. In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984). Instead, inquiry into the Debtor's entities is directly tied to the basic discovering of assets and the related determination of whether his assets were properly disclosed in this proceeding.

13.    The cases that the Debtor cites in his Response do not support his position. First, the discovery sought by St. Luke's Creditors is well-within the scope of Rule 2004 as discussed *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). Second, the Debtor mischaracterizes *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983) as standing for the proposition that "[a]bsent proof of control or concealment, a third party's corporate records cannot be reached."

6

Response at 4. But that case does not refer to either proving "control or concealment" or "third party's corporate records." Instead, *GHR's* central holding is that "a Rule 2004 examination is not intended to provide the *debtors* unlimited access to the internal affairs of [their] creditors and those employed by its creditors." *Id.* at 455 (emphasis in original). Third, Debtor also mischaracterizes *In re Snyder*, 52 F.3d 1067, 1071 (5th Cir. 1995), as standing for the proposition that "[d]iscovery must relate directly to the debtor." Response at 4. Again, that case does not stand for that principle and in any event, the discovery that the St. Luke's Creditors seek does relate to the Debtor and his assets. Fourth, the Debtor cites *Official Comm. of Unsecured Creditors v. Eagle-Picher Indus.* (*In re Eagle-Picher Indus.*), 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), for the proposition that a creditor "must show fraud or alter ego before reaching non-debtor records." Response at 4. But again, *Eagle-Pincher* does not address that issue at all, and instead focused on whether creditors could seek discovery under Rule 2004 and during the exclusivity period to develop an alternative to a plan of reorganization that the debtor proposed. *See id.* at 169 B.R. at 134. Like the other cases that the Debtor cites, *Eagle-Pincher* had nothing to do with the facts at issue here.

    **D.**    **The Debtor's Hostility to the Legal Process is Well-Documented.**

14. The Debtor's assertion that he would be "unsafe" during an in-person deposition is disingenuous. *See e.g.,* Response at 3. Mr. Bundy provides no valid basis for that assertion. The St. Luke's Creditors seek an in-person deposition for efficiency, to limit the Debtor's evasiveness, and to ensure the Debtor answers based on his personal knowledge. The St. Luke's Creditors will be deposing the Debtor on several documents and records, and during the prior deposition, which this Court ordered by done by video conference, the Debtor evaded questions and performed for the online audience to whom the Debtor was streaming his deposition. During his video conference

7

deposition, there was at least one individual (whom the Debtor would not identify) who appeared to be providing answers to pending questions to the Debtor. Further, the Debtor was communicating with others on his computer during the video conference deposition. Thus, the St. Luke's Creditors have no choice but to seek permission to conduct the Debtor's deposition in person to avoid these disruptive tactics and shenanigans. Moreover, the deposition would be held in St. George, Utah so it will be convenient for the Debtor. The St. Luke's Creditors simply seek to be treated fairly and allowed to take a proper deposition of the Debtor.

## CONCLUSION

WHEREFORE, the St. Luke's Creditors request the Court deny the Debtor's Motion to Quash, and grant the Second Motion to Compel, requiring that the Debtor (a) produce all of the documents requested in the Amended Subpoena, including those expressly discussed during the truncated Rule 2004 examination, and (b) sit for a resumed Rule 2004 Examination.

DATED this 27th day of June, 2025.

HOLLAND & HART LLP

*/s/ Erik F. Stidham*
Erik F. Stidham (Admitted Pro Hac Vice)

HOLLAND & HART LLP
As local counsel

*/s/ Engels Tejeda*
Darren G. Reid (#11163)
Engels Tejeda (#11427)
Benjamin D. Passey (#19234)

Attorneys for St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., and Tracy Jungman, NP

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2025, I electronically filed the foregoing with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF user.

Mark C. Rose
McKay, Burton & Thurman, P.C.
trustee@mbt-law.com; UT32@ecfbis.com

David W. Newman
Matthew J. Burne
U.S. Department of Justice
david.w.newman@usdoj.gov; matthew.burne@usdoj.gov;
james.gee@usdoj.gov; lindsey.huston@usdoj.gov; rinehart.peshell@usdoj.gov;
rachelle.d.hughes@usdoj.gov; Brittany.dewitt@usoj.gov

U.S. Trustee
USTPRegion19.SK.ECF@usdoj.gov

George B. Hofmann
ghofmann@ck.law; mparks@ck.law

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants by First Class U.S. Mail, with postage prepaid, addressed as follows:

Ammon Edward Bundy, *pro se*
P.O. Box 1062
Cedar City, UT 84721-0991

Ammon Edward Bundy
896 E 400 S
New Harmony, UT 84757

                                               */s/ Engels Tejeda*
                                               Engels Tejeda

35133420_v1