George Hofmann (10005)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Mark C. Rose,
Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re<br><br>AMMON EDWARD BUNDY,<br><br>Debtor. | Bankruptcy No. 24-23530 (WTT)<br><br>Chapter 7 |
|---|---|

### MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE, ST. LUKE'S HEALTH SYSTEM, LTD., ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., CHRIS ROTH, NATASHA ERICKSON, M.D., TRACY JUNGMAN, NP, AND KEKOA GROVE, INC.

Mark C. Rose, in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Ammon Edward Bundy (the "Debtor"), moves this Court pursuant to Fed. R. Bankr. P. 9019 for an order approving the compromise and settlement between and among the Trustee, on the one hand, and St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., Tracy Jungman, NP (collectively, the "Creditors"), and Kekoa Grove, Inc. ("Kekoa"). The Trustee, the Creditors, and Kekoa are hereafter referred to as the "Parties". In support of this Motion, the Trustee represents to the Court as follows:

**GENERAL BACKGROUND**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On July 17, 2024, the Debtor filed bankruptcy under Chapter 7 of the Bankruptcy Code resulting in bankruptcy case 24-23530 (the "Case"), which created a bankruptcy estate pursuant to Bankruptcy Code § 541 (the "Estate"). Mark C. Rose was appointed as the Chapter 7 Trustee for the Estate.

3. By this Court's Order Granting Motion for Approval of Settlement Agreement Between the Trustee, the Debtor, and Mrs. Bundy [Docket No. 474] (the "Bundy Settlement Order"), this Court approved a settlement with the Debtor and his wife (the "Bundy Settlement Agreement") through which, in summary, the Debtor paid the Trustee $120,000, and the Trustee in exchange released any claims to the "Cash" and the "Other Assets".

4. The Trustee has received $120,000 from the Debtor pursuant to that settlement. Although the Estate has other assets, rights, and claims after giving effect to the earlier settlement with Mr. Bundy and his wife, there is absolutely no possibility that the Trustee will recover sufficient proceeds to satisfy the claims of the Creditors, which are asserted in the collective amount in excess of $74 million.

5. The claims bar date in this case was December 2, 2024. The Creditors are the only creditors to have timely filed claims before the claims bar date. A number of claims were filed with the Court after the claims bar date, several of them by the

2

Debtor. However, pursuant to Bankruptcy Code § 726(a)(3), the Trustee does not make any distribution to those claims unless and until the timely filed claims of the Creditors are paid in full, which again, is not a possibility in this case.

### THE SETTLEMENT AGREEMENT

6.	Attached as Exhibit A to this Motion is a copy of the Settlement Agreement between the Parties (the "Agreement").[1]  The Agreement is summarized in this Motion, but to the extent there are any inconsistencies between this summary and the Agreement, the Agreement itself controls.  Accordingly, creditors and parties-in-interest are directed to the Agreement itself for its complete terms.

7.	The express purpose of the Agreement (see paragraph 5 of the Agreement) is to transfer the remaining assets, rights, and claims of the Estate to the Creditors in order to permit the Trustee to make a final distribution to the Creditors and end the administration of this case by the Trustee.  Although the Agreement provides that the Trustee may ask for enhanced compensation in the amount of up to $25,000 in connection with his final report, the Trustee is not asking the Court to approve or even consider that request for compensation at this time.

8.	Under the Agreement, the Creditors will pay the Trustee $20,000.  The Trustee will transfer certain assets, rights, and claims to the Creditors, but the Agreement makes it very clear (see page 2 of the Agreement) that the assets, rights, and claims transferred do not include the any of the "Assets" which were the subject of

---

[1] The copy of the Agreement attached as Exhibit A is currently executed only by the Trustee; the Trustee will subsequently file a supplement with a fully executed copy once available.

3

the earlier Bundy Settlement Agreement, and to the extent of any conflict, the Debtor is entitled to all of the "Assets" as defined in the Bundy Settlement Agreement.

9.  The Trustee has agreed under the Agreement to release the Potential Preference Claims against Creditors and/or Kekoa, and to the Creditors the "Causes of Action" and also the Settlement Assets.  The Parties also agreed to exchange broad general releases of any and all claims.

10. The Trustee does not make any representations or warranties of any kind in connection with the Agreement.  The transfers contemplated are "as is", "where is", and "if is" in all respects.

## **DISCUSSION**

11. In considering a proposed compromise and settlement, this Court applies the factors enunciated in In re Kopexa Realty Venture Co., 213 B.R. 1020 (B.A.P. 10th Cir. 1997).  These factors are: (1) the probable success of the underlying litigation on the merits; (2) the possible difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views.  Id. at 1022.  The Trustee submits that these factors support approval of the Agreement.

12. With regard to the merits, the Trustee believes that he likely has a meritorious preference claim against Kekoa and the Creditors, because they executed or realized on interests and/or stock in Abish Husbondi, Inc., and Dono Custos, Inc., within 90 days of the Debtor's bankruptcy filing.  However, if the Trustee were to pursue those preference claims, there would be no benefit to the Creditors, which are the

4

entities that would ultimately receive the proceeds of any preferential transfer recoveries.  For example, if it is assumed that the value the Abish Husbondi, Inc. and Dono Custos, Inc. stock were $5 million (and this figure is almost certainly way too high), the Trustee could recover the stock, sell it for $5 million, then distribute the net proceeds (less his Trustee's commission and professional fees to achieve that recovery) back to the Creditors.  But it makes no sense at all for the Trustee to sue the Creditors in order to recover funds and distribute those funds back to the Creditors.  In short, there is no benefit to Creditors in the Trustee pursuing recovery of those preferential transfers.

13.    As to the Settlement Assets, the Trustee has good claims to recover most or all of the Settlement Assets.  The Causes of Action may also have merit.  But again, there is no benefit to the Creditors, who are ultimately the beneficiaries of this Estate, in the Trustee acting as a "middle man", seeking recovery of the Settlement Assets and Causes of Action, then distributing the proceeds of his recoveries to the Creditors, minus his Trustee's commission and professional fees.  The Creditors are certainly well equipped to pursue the Settlement Assets and the Causes of Action as they see fit, without the intermediary of the Trustee and his attendant additional costs.

14.    The first factor therefore weighs in favor of compromise and settlement.  Moreover, the Trustee must take into account the risk that he does not prevail in the recovery of the Settlement Assets and the Causes of Action.

15.    The second <u>Kopexa</u> factor, the difficulty in collection of a judgment, is a significant factor in this settlement.  Particularly with respect to the Causes of Action, the

5

Trustee could pursue these claims, but collection of any judgment could pose significant hurdles to the Trustee. The proposed settlement eliminates any collection risk to the Estate.

16. The third Kopexa factor, the complexity and expense of the litigation, also weighs in favor of the proposed settlement. Pursuit of the Settlement Assets and the Causes of Action would undoubtedly entail substantial expense, which expense would come at the expense of distributions to the Creditors.

17. Concerning the fourth Kopexa factor, the interests of creditors in deference to their reasonable views, this factor obviously weighs strongly in favor of the settlement, since the Creditors are in support of the Agreement.

18. Finally, there are other reasons beyond the traditional Kopexa factors why the Court should approve the settlement. Under Bankruptcy Code § 704(a)(1), it is the Trustee's duty to "close such estate as expeditiously as is compatible with the best interests of parties in interest." The Trustee hopes and believes that approval of the settlement will result in a rapid administration of this estate, and would certainly be more expeditious than the litigation alternatives. Indeed, the express purpose of this settlement is to enable the Trustee to make a final distribution to Creditors and end his administration of this case.

19. It is the "inveterate policy of the law" "to encourage, promote, and sustain the settlement and compromise of disputed claims." Collecting Supplies LLC v. City of Mankato (In re Collecting Supplies LLC), 2013 Bankr. LEXIS 917, 13-14 (B.A.P. 10th Cir. Mar. 11, 2013). Certainly the settlement, which resolves numerous potential

6

contested matters that would otherwise require litigation, advance this policy.

**WHEREFORE**, the Trustee respectfully requests that the Agreement be approved, that this Court enter an Order approving the Agreement, and for such other and further relief as may be just and proper.

DATED:  October 28, 2025

**COHNE KINGHORN, P.C.**

/s/ George Hofmann
GEORGE HOFMANN

Attorneys for the Trustee

# EXHIBIT "A"

# SETTLEMENT AGREEMENT

**This Settlement Agreement** ("Agreement") is entered into between Mark C. Rose (the "Trustee"), not individually but solely his capacity as the duly appointed and qualified Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Ammon Edward Bundy (the "Estate") and St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., Tracy Jungman, NP (collectively, the "Creditors"), and Kekoa Grove, Inc. ("Kekoa").

## R E C I T A L S:

**Whereas**, on July 17, 2024, Ammon Edward Bundy (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Case") in the United States Bankruptcy Court for the District of Utah (the "Court");

**Whereas**, subsequently, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate");

**Whereas**, based upon the Trustee's investigation, including the testimony of the Debtor at an examination conducted under Fed. R. Bankr. P. 2004 on February 25, 2025, the Trustee believes that he has potential claims to recover what he contends is property of the Estate under Bankruptcy Code §§ 541 and 542 as follows (the "Settlement Assets"):

- Assets purchased with a portion of the proceeds of the sale of the former residence of the Debtor and Mrs. Bundy in Arizona (but expressly excluding any right to the "Cash" as defined in the Debtor Agreement), namely one or more service trucks, inventory of exhaust parts (including exhaust valve assemblies, adapters/reducers, marketing stands, hardware), logos and marketing materials,

{00110207.DOC / }

internet domain name(s), and intellectual property rights (including orifice size in valve, valve assembly supplier, flange supplier, customer list, and digital marketing designs), and the proceeds of any of the foregoing.

- Any and all rights of the Estate to money held in a Bank of Southern Utah account held in the name of TLA Enterprises, LLC, which appears to be the product of the Debtor's pre-bankruptcy labor.
- Receivables.

For the avoidance of doubt, the "Settlement Assets" do not include any of the "Assets" as defined in the Settlement Agreement previously approved by the Court by its Order dated August 15, 2025 between the Trustee and the Debtor (the "Debtor Settlement"), and to the extent of any conflict, the Debtor is entitled to all of the "Assets" under the Debtor Agreement).

**Whereas**, the Estate has potential claims against parties who may have received transfers of money, property, or assets from the Debtor, including rights and claims under Chapter 5 of the Bankruptcy Code (including without limitation rights of recovery under Bankruptcy Code §§ 544-550), and also claims of the Estate for unjust enrichment or breach of contract (the "Causes of Action");

**Whereas**, the Estate has potential claims against the Creditors and/or Kekoa based on their obtaining interests and/or stock in Abish Husbondi, Inc. and Dono Custos, Inc. within 90 days before the Debtor's bankruptcy filing (the "Potential Preference Claims");

**Whereas**, in order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the dispute between the parties to this

2

4928-0961-8034, v. 2

Agreement, the Trustee, the Creditors, and Kekoa (collectively, the "Parties") have agreed to a compromise and settlement to resolve their differences with finality concerning the matters described above.

### Settlement Agreement

**Now, Therefore,** based upon the foregoing facts and recitals, the Parties stipulate and agree as follows:

1. The Creditors have agreed to pay to the Trustee the sum of $20,000 (the "Settlement Amount") not later than November 7, 2025. In the event that the Court does not approve this Settlement Agreement, the Trustee will return the Settlement Amount to the Creditors.

2. Should the Creditors fail to pay the Settlement Amount when due, the Trustee, in his sole discretion, may declare this Agreement and all of its terms to be null and void. If this Agreement is so declared and rendered void, the Parties shall retain all of their respective rights and claims, and nothing contained herein shall be deemed a waiver of any and all rights and remedies of the Parties nor an acknowledgment by either party as to their respective rights and claims as provided for herein or otherwise.

3. This Agreement is subject to notice to creditors in the Bankruptcy Case and approval of the Court. The Trustee agrees to seek such approval in a timely manner. The "Effective Date" of this Agreement is one business day after the Court's approval of this Agreement.

4. Within seven business days of the Effective Date, the Trustee will execute and deliver to the Creditors or their designee a bill of sale transferring any and all rights of the Estate to the Settlement Assets and the Causes of Action, which bill of sale will

contain express disclaimers of any representations and warranties of any kind consistent with the express disclaimer contained in this Agreement.

5. The intent of the Parties through this Agreement is to allow the Trustee to expeditiously end the administration of this Estate, make a final distribution to creditors as may be approved by the Court, and to discharge the Trustee and close the Case, all immediately after approval of this Agreement. In this regard, the Trustee may request compensation as trustee in this case in excess of the normal commission schedule in Bankruptcy Code § 326 up to the amount of $25,000, and the Creditors agree not to object to such a request and to support it in the Court. To facilitate the Trustee's exit from the Case, and to the extent that the Court finds any of the Settlement Assets or Causes of Action cannot be sold or assigned to the Creditors, then the Trustee hereby stipulates to the appointment of the Creditors to collect any such Settlement Assets or prosecute any such Causes of Action for the benefit of the Estate, and to the Creditors' filing of an application for an administrative expense claim in the amount of all reasonable fees and costs incurred in pursuing such Settlement Assets or Causes of Action.

6. Notwithstanding anything to the contrary, the Settlement Assets and the Causes of Action are being sold "as is," "where is," and "if is" in all respects; neither the Trustee nor any of his agents, attorneys, or representatives have made or makes any warranty or representation whatsoever regarding the Settlement Assets and the Causes of Action, or any other matter in any way related to the Settlement Assets and the Causes of Action, including, but not limited to, title to the Settlement Assets and the Causes of Action, use, value, or any other condition of the Settlement Assets and the

4

Causes of Action.  Without limitation, it is possible that the Trustee may not have the legal right to transfer claims and causes of action under Chapter 5 of the Bankruptcy Code, and the Creditors and Kekoa expressly undertake and assume that risk.  By signing below, the Creditors and Kekoa agree that they are not relying on and they hereby specifically waive any claim of liability based on any statement, representation, warranty, promise, covenant, or undertaking the Trustee or any other person representing or purporting to represent the Trustee in connection with the sale of the Settlement Assets and the Causes of Action.  BY SIGNING BELOW, THE CREDITORS AND KEKOA EXPRESSLY DISCLAIM ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, IN CONNECTION WITH THE SALE OF THE SETTLEMENT ASSETS AND CAUSES OF ACTION, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  The bill of sale required by this Agreement will contain an express disclaimer of representations and warranties consistent with this paragraph.

      7.      On the Effective Date, the Trustee, on behalf of Estate, its affiliates and subsidiaries, and any predecessor or successor, or any other entity or person claiming by, through or under any of them (the "Trustee Releasors") hereby releases and forever discharges the Creditors and Kekoa and their past and present attorneys, accountants, predecessors, successors and assigns (the "Trustee Releasees") of and from any and all claims, counterclaims, crossclaims, actions, causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, bills, notices, controversies, obligations, liabilities, damages, judgments, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses

5

of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, matured or unmatured, which any of the Trustee Releasors at anytime had, owned or held from the beginning of the world through the date of this Agreement against any of the Trustee Releasees, including without limitation the Potential Preference Claims (except for any obligations arising under this Agreement) (all of the foregoing are hereinafter collectively referred to as the "Trustee Claims").  The Trustee hereby waives the right to commence, institute or prosecute any lawsuit, action, or other proceeding against the Trustee Releasees relating to, arising from or in connection with the Trustee Claims.

        8.       On the Effective Date, the Creditors and Kekoa, their affiliates and subsidiaries, and any predecessor or successor, or any other entity or person claiming by, through or under any of them (the "Creditor Releasors") hereby release and forever discharge the Trustee, and his past and present attorneys, accountants, predecessors, successors and assigns (the "Creditor Releasees") of and from any and all claims, counterclaims, crossclaims, actions, causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, bills, notices, controversies, obligations, liabilities, damages, judgments, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, matured or unmatured, which any of the Creditor Releasors at anytime had, owned or held from the beginning of the world through the date of this Agreement against any of the Creditor Releasees (except for any obligations arising under this Agreement (all of the foregoing are hereinafter

6

collectively referred to as the "Creditor Claims"). <u>Provided, however</u>, that notwithstanding anything in this Agreement to the contrary, the Creditor Claims herein released do not and shall not be interpreted to include the claims that the Creditors have asserted in the Case against the Estate or the Debtor. For the further avoidance of doubt, notwithstanding anything in this Agreement to the contrary, the "Creditor Claims" do <u>not</u> include <u>any</u> rights that the Creditors may have to a distribution on account of the Proofs of Claim they filed in the Case, or the claims that they have asserted against the Debtor in the case and that the Court has determined to be excepted from the discharge under Section 523(a)(6) of the Bankruptcy Code.

9. The Trustee agrees that this Agreement shall be binding upon the Trustee Releasors, and that this Agreement shall inure to the benefit of the Trustee Releasees.

10. The Creditors and Kekoa agree that this Agreement shall be binding upon the Creditor Releasees, and that this Agreement shall inure to the benefit of the Creditor Releasors.

11. The Parties agree that neither the acceptance of, nor the performance of any obligations under this Agreement shall constitute or be construed as an admission of liability by any of the Parties.

12. **Knowledge and Understanding of Terms**: All Parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement. All Parties to this Agreement warrant and represent to each other that they have, either personally or through their attorneys, fully investigated to their full satisfaction all of the facts surrounding the various claims, controversies and disputes between them and they are

4928-0961-8034, v. 2

fully satisfied with the terms, conditions and effects of this Agreement. All Parties warrant and represent, each to the other, that no promises or inducements have been offered or made except as herein set forth, and this Agreement is executed without reliance on any statement or representation made by any of the Parties or their agents, except as herein set forth.

13. **Entire Agreement**: This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

14. **Governing Law**: This Agreement and the rights and obligations of the Parties hereunder shall be construed in accordance with and governed by the internal laws of the State of Utah.

15. **Retention of Jurisdiction**: The Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

16. **Counterparts:** This Agreement may be executed in counterparts and counterparts containing the signatures of all Parties shall represent one and the same agreement.

17. **Execution Documents**: All Parties agree to execute any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this Agreement.

8

**Dated** this 23rd day of October, 2025

                ST. LUKE'S HEALTH SYSTEM, LTD.

                _____
                Print Name:
                Title:

                ST. LUKE'S REGIONAL MEDICAL CENTER, LTD.

                _____
                Print Name:
                Title:

                KEKOA GROVE, INC.

                _____
                Print Name:
                Title:

                _____
                Chris Roth

                _____
                Natasha Erickson, M.D.

                _____
                Tracy Jungman, NP

                /s/ Mark C. Rose
                _____
                Mark C. Rose, in his capacity as Chapter 7
                Trustee of the Estate

35765278_v4