George Hofmann (10005)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300

Attorneys for Mark C. Rose,
Chapter 7 Trustee

---

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re | Bankruptcy No. 24-23530 (WTT) |
| AMMON EDWARD BUNDY, | Chapter 7 |
| Debtor. | Honorable William T. Thurman |

## NOTICE OF FILING EXECUTED SETTLEMENT AGREEMENT

**PLEASE TAKE NOTICE** that Chapter 7 Trustee Mark C. Rose (the "Trustee") previously filed his Motion for Approval of Settlement Agreement Between the Trustee, St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, LTD., Chris Roth, Natasha Erickson, M.D., Tracy Jungman, NP, and Kekoa Grove, Inc. [Docket No. 488] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Motion, in paragraph 6 and footnote 1, stated that the Trustee would file a fully executed copy of the Settlement Agreement as soon as it became available. Attached to this notice as Exhibit A is the fully executed Settlement Agreement.

Dated: December 4, 2025

COHNE KINGHORN, P.C.

/s/ George Hofmann
GEORGE HOFMANN

Attorneys for the Trustee

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

**This Settlement Agreement** ("Agreement") is entered into between Mark C. Rose (the "Trustee"), not individually but solely his capacity as the duly appointed and qualified Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Ammon Edward Bundy (the "Estate") and St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., Chris Roth, Natasha Erickson, M.D., Tracy Jungman, NP (collectively, the "Creditors"), and Kekoa Grove, Inc. ("Kekoa").

## R E C I T A L S:

**Whereas**, on July 17, 2024, Ammon Edward Bundy (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Case") in the United States Bankruptcy Court for the District of Utah (the "Court");

**Whereas**, subsequently, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate");

**Whereas**, based upon the Trustee's investigation, including the testimony of the Debtor at an examination conducted under Fed. R. Bankr. P. 2004 on February 25, 2025, the Trustee believes that he has potential claims to recover what he contends is property of the Estate under Bankruptcy Code §§ 541 and 542 as follows (the "Settlement Assets"):

- Assets purchased with a portion of the proceeds of the sale of the former residence of the Debtor and Mrs. Bundy in Arizona (but expressly excluding any right to the "Cash" as defined in the Debtor Agreement), namely one or more service trucks, inventory of exhaust parts (including exhaust valve assemblies, adapters/reducers, marketing stands, hardware), logos and marketing materials,

- internet domain name(s), and intellectual property rights (including orifice size in valve, valve assembly supplier, flange supplier, customer list, and digital marketing designs), and the proceeds of any of the foregoing.
- Any and all rights of the Estate to money held in a Bank of Southern Utah account held in the name of TLA Enterprises, LLC, which appears to be the product of the Debtor's pre-bankruptcy labor.
- Receivables.

For the avoidance of doubt, the "Settlement Assets" do not include any of the "Assets" as defined in the Settlement Agreement previously approved by the Court by its Order dated August 15, 2025 between the Trustee and the Debtor (the "Debtor Settlement"), and to the extent of any conflict, the Debtor is entitled to all of the "Assets" under the Debtor Agreement).

**Whereas**, the Estate has potential claims against parties who may have received transfers of money, property, or assets from the Debtor, including rights and claims under Chapter 5 of the Bankruptcy Code (including without limitation rights of recovery under Bankruptcy Code §§ 544-550), and also claims of the Estate for unjust enrichment or breach of contract (the "Causes of Action");

**Whereas**, the Estate has potential claims against the Creditors and/or Kekoa based on their obtaining interests and/or stock in Abish Husbondi, Inc. and Dono Custos, Inc. within 90 days before the Debtor's bankruptcy filing (the "Potential Preference Claims");

**Whereas**, in order to avoid the expense of prolonged litigation and the uncertainty of trial and in order to settle the dispute between the parties to this

2

Agreement, the Trustee, the Creditors, and Kekoa (collectively, the "Parties") have agreed to a compromise and settlement to resolve their differences with finality concerning the matters described above.

**Settlement Agreement**

**Now, Therefore,** based upon the foregoing facts and recitals, the Parties stipulate and agree as follows:

1. The Creditors have agreed to pay to the Trustee the sum of $20,000 (the "Settlement Amount") not later than October 20, 2025.  In the event that the Court does not approve this Settlement Agreement, the Trustee will return the Settlement Amount to the Creditors.

2. Should the Creditors fail to pay the Settlement Amount when due, the Trustee, in his sole discretion, may declare this Agreement and all of its terms to be null and void.  If this Agreement is so declared and rendered void, the Parties shall retain all of their respective rights and claims, and nothing contained herein shall be deemed a waiver of any and all rights and remedies of the Parties nor an acknowledgment by either party as to their respective rights and claims as provided for herein or otherwise.

3. This Agreement is subject to notice to creditors in the Bankruptcy Case and approval of the Court.  The Trustee agrees to seek such approval in a timely manner.  The "Effective Date" of this Agreement is one business day after the Court's approval of this Agreement.

4. Within seven business days of the Effective Date, the Trustee will execute and deliver to the Creditors or their designee a bill of sale transferring any and all rights of the Estate to the Settlement Assets and the Causes of Action, which bill of sale will

3

contain express disclaimers of any representations and warranties of any kind consistent with the express disclaimer contained in this Agreement.

5. The intent of the Parties through this Agreement is to allow the Trustee to expeditiously end the administration of this Estate, make a final distribution to creditors as may be approved by the Court, and to discharge the Trustee and close the Case, all immediately after approval of this Agreement. In this regard, the Trustee may request compensation as trustee in this case in excess of the normal commission schedule in Bankruptcy Code § 326 up to the amount of $25,000, and the Creditors agree not to object to such a request and to support it in the Court. To facilitate the Trustee's exit from the Case, and to the extent that the Court finds any of the Settlement Assets or Causes of Action cannot be sold or assigned to the Creditors, then the Trustee hereby stipulates to the appointment of the Creditors to collect any such Settlement Assets or prosecute any such Causes of Action for the benefit of the Estate, and to the Creditors' filing of an application for an administrative expense claim in the amount of all reasonable fees and costs incurred in pursuing such Settlement Assets or Causes of Action.

6. Notwithstanding anything to the contrary, the Settlement Assets and the Causes of Action are being sold "as is," "where is," and "if is" in all respects; neither the Trustee nor any of his agents, attorneys, or representatives have made or makes any warranty or representation whatsoever regarding the Settlement Assets and the Causes of Action, or any other matter in any way related to the Settlement Assets and the Causes of Action, including, but not limited to, title to the Settlement Assets and the Causes of Action, use, value, or any other condition of the Settlement Assets and the

4

Causes of Action.  Without limitation, it is possible that the Trustee may not have the legal right to transfer claims and causes of action under Chapter 5 of the Bankruptcy Code, and the Creditors and Kekoa expressly undertake and assume that risk.  By signing below, the Creditors and Kekoa agree that they are not relying on and they hereby specifically waive any claim of liability based on any statement, representation, warranty, promise, covenant, or undertaking the Trustee or any other person representing or purporting to represent the Trustee in connection with the sale of the Settlement Assets and the Causes of Action.  BY SIGNING BELOW, THE CREDITORS AND KEKOA EXPRESSLY DISCLAIM ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, IN CONNECTION WITH THE SALE OF THE SETTLEMENT ASSETS AND CAUSES OF ACTION, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  The bill of sale required by this Agreement will contain an express disclaimer of representations and warranties consistent with this paragraph.

7. On the Effective Date, the Trustee, on behalf of Estate, its affiliates and subsidiaries, and any predecessor or successor, or any other entity or person claiming by, through or under any of them (the "Trustee Releasors") hereby releases and forever discharges the Creditors and Kekoa and their past and present attorneys, accountants, predecessors, successors and assigns (the "Trustee Releasees") of and from any and all claims, counterclaims, crossclaims, actions, causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, bills, notices, controversies, obligations, liabilities, damages, judgments, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses

5

of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, matured or unmatured, which any of the Trustee Releasors at anytime had, owned or held from the beginning of the world through the date of this Agreement against any of the Trustee Releasees, including without limitation the Potential Preference Claims (except for any obligations arising under this Agreement) (all of the foregoing are hereinafter collectively referred to as the "Trustee Claims").  The Trustee hereby waives the right to commence, institute or prosecute any lawsuit, action, or other proceeding against the Trustee Releasees relating to, arising from or in connection with the Trustee Claims.

        8.       On the Effective Date, the Creditors and Kekoa, their affiliates and subsidiaries, and any predecessor or successor, or any other entity or person claiming by, through or under any of them (the "Creditor Releasors") hereby release and forever discharge the Trustee, and his past and present attorneys, accountants, predecessors, successors and assigns (the "Creditor Releasees") of and from any and all claims, counterclaims, crossclaims, actions, causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, bills, notices, controversies, obligations, liabilities, damages, judgments, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, matured or unmatured, which any of the Creditor Releasors at anytime had, owned or held from the beginning of the world through the date of this Agreement against any of the Creditor Releasees (except for any obligations arising under this Agreement (all of the foregoing are hereinafter

6

collectively referred to as the "Creditor Claims").  <u>Provided, however</u>, that notwithstanding anything in this Agreement to the contrary, the Creditor Claims herein released do not and shall not be interpreted to include the claims that the Creditors have asserted in the Case against the Estate or the Debtor. For the further avoidance of doubt, notwithstanding anything in this Agreement to the contrary, the "Creditor Claims" do <u>not</u> include <u>any</u> rights that the Creditors may have to a distribution on account of the Proofs of Claim they filed in the Case, or the claims that they have asserted against the Debtor in the case and that the Court has determined to be excepted from the discharge under Section 523(a)(6) of the Bankruptcy Code.

9. The Trustee agrees that this Agreement shall be binding upon the Trustee Releasors, and that this Agreement shall inure to the benefit of the Trustee Releasees.

10. The Creditors and Kekoa agree that this Agreement shall be binding upon the Creditor Releasees, and that this Agreement shall inure to the benefit of the Creditor Releasors.

11. The Parties agree that neither the acceptance of, nor the performance of any obligations under this Agreement shall constitute or be construed as an admission of liability by any of the Parties.

12. **Knowledge and Understanding of Terms**: All Parties to this Agreement warrant and represent to each other that they are fully informed and have full knowledge and understanding of the terms, conditions and effects of this Agreement.  All Parties to this Agreement warrant and represent to each other that they have, either personally or through their attorneys, fully investigated to their full satisfaction all of the facts surrounding the various claims, controversies and disputes between them and they are

7

fully satisfied with the terms, conditions and effects of this Agreement. All Parties warrant and represent, each to the other, that no promises or inducements have been offered or made except as herein set forth, and this Agreement is executed without reliance on any statement or representation made by any of the Parties or their agents, except as herein set forth.

13. **Entire Agreement**: This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

14. **Governing Law**: This Agreement and the rights and obligations of the Parties hereunder shall be construed in accordance with and governed by the internal laws of the State of Utah.

15. **Retention of Jurisdiction**: The Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof.

16. **Counterparts:** This Agreement may be executed in counterparts and counterparts containing the signatures of all Parties shall represent one and the same agreement.

17. **Execution Documents**: All Parties agree to execute any and all supplementary documents and to take all supplementary steps to give full force and effect to the basic terms and intent of this Agreement.

**Dated** this 23rd day of October, 2025

St. Luke's Health System, Ltd.

*Christine Neuhoff*
Print Name: Christine Neuhoff
Title: Senior Vice President & Chief Legal Officer
Senior Vice President & Chief Legal Officer

St. Luke's Regional Medical Center, Ltd.

*Christine Neuhoff*
Print Name: Christine Neuhoff
Title: Senior Vice President & Chief Legal Officer

Kekoa Grove, Inc.


Print Name:
Title:

*Chris Roth*
Chris Roth

*Natasha Erickson, MD*
Natasha Erickson, M.D.

*Tracy Jungman*
Tracy Jungman, NP


Mark C. Rose, in his capacity as Chapter 7 Trustee of the Estate

35765278_v4

9

4928-0961-8034, v. 2

Dated this 23rd day of October, 2025

ST. LUKE'S HEALTH SYSTEM, LTD.

_____
Print Name:
Title:

ST. LUKE'S REGIONAL MEDICAL CENTER, LTD.

_____
Print Name:
Title:

KEKOA GROVE, INC.

*/s/ J. D. Mallet*
_____
Print Name: JOSEPH D. MALLET
Title: PRESIDENT

_____
Chris Roth

_____
Natasha Erickson, M.D.

_____
Tracy Jungman, NP

_____
Mark C. Rose, in his capacity as Chapter 7 Trustee of the Estate

35765278_v4

9

4928-0961-8034, v. 2

Dated this 23rd day of October, 2025

        St. Luke's Health System, Ltd.

_____
Print Name:
Title:

        St. Luke's Regional Medical Center, Ltd.

_____
Print Name:
Title:

Kekoa Grove, Inc.

_____
Print Name:
Title:

_____
Chris Roth

_____
Natasha Erickson, M.D.

_____
Tracy Jungman, NP

*/s/ M. C. R.*
_____
Mark C. Rose, in his capacity as Chapter 7 Trustee of the Estate

35765278_v4